**OHIO CENTRAL RAILROAD SYSTEM, Appellant, et al.,**

v.

**MASON LAW FIRM CO., L.P.A. et al., Appellees.**

[Cite as *Ohio Cent. RR. Sys. v. Mason Law Firm Co., L.P.A.,* 182 Ohio App.3d 814, 2009-Ohio-3238.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 08AP–740.

Decided June 30, 2009.

816

Volkema Thomas L.P.A., Michael S. Miller, and Daniel R. Volkema, for appellant, Ohio Central Railroad System.

Reminger Co., L.P.A., James J. Brudny Jr., and Gregory D. Brunton; and The Mason Law Firm and Ronald L. Mason, for appellees.

---

SADLER, Judge.

{¶ 1} Plaintiff-appellant Ohio Central Railroad System appeals from the judgment of the Franklin County Court of Common Pleas, which granted summary judgment in favor of defendants-appellees, The Mason Law Firm and Ronald L. Mason, as to appellant's claim for legal malpractice.

{¶ 2} The following facts and procedural history are taken from the record and are undisputed unless otherwise noted. On May 15, 2002, appellant's former employee, Matthew Lingo, was injured in the course of his employment when he fell while attempting to board a rail car that was not equipped with the required grab bars. Lingo suffered severe injuries, requiring a partial amputation of one leg.

{¶ 3} Appellant had purchased a policy of liability insurance from nonparty United States Fidelity & Guaranty ("USF & G"). The policy was underwritten by nonparty Certain Underwriters at Lloyds London ("Lloyds"). Nonparty Railway Claims Services, Inc. ("RCS") administered the policy pursuant to a contractual agreement between RCS and Lloyds. On September 4, 2002, RCS, acting as agent for Lloyds, engaged appellees to represent appellant in connection with anticipated litigation relating to Lingo's injury.

{¶ 4} Appellant alleged that during the course of their representation, appellees advised appellant that it could terminate Lingo's employment because Lingo had failed to return to work at some point after his injury. On September 25, 2002, Lingo sued appellant in the Franklin County Court of Common Pleas pursuant to the Federal Safety Appliance Act ("FSAA") and the Federal Employees Liability Act ("FELA"). After voluntarily dismissing his complaint, Lingo refiled it and included a claim for wrongful discharge ("*Lingo* litigation"). Appellant filed a third-party complaint for contribution and indemnification as to the FELA claim against Norfolk Southern Railway ("NSR") alleging that NSR was the entity responsible for ensuring the safety of the railcar upon which Lingo had been injured.

{¶ 5} The policy covered the FELA and FSAA claims and provided for $100,000 in self-insurance retention ("SIR"), meaning that appellant was responsible for paying the first $100,000 of any liability under the policy, including attorney fees, costs, and damages; and Lloyds was only contractually required to

indemnify appellant for any liability and/or attorney fees incurred in excess of $100,000. The evidence demonstrates, and appellant concedes, that it would have expended the full $100,000 SIR on the litigation of the FELA and FSAA claims regardless of whether appellees were negligent.

{¶ 6} In the *Lingo* litigation, NSR filed a motion for summary judgment as to appellant's claims for contribution and indemnification, and the trial court granted the motion. In October 2004, RCS discharged appellees from all representation of appellant. RCS also claimed that Lingo's wrongful-discharge claim was not covered by the policy. Appellant immediately rehired appellees to defend the wrongful-discharge claim only, but ultimately discharged appellees as trial approached. A new attorney represented appellant as to all of Lingo's claims until the conclusion of the litigation, which resulted in a $100,000 settlement of the wrongful-discharge claim and a $1.3 million jury verdict in Lingo's favor on his FELA claim. Lloyds paid the settlement and judgment.

{¶ 7} Appellant appealed from that judgment, arguing that the trial court had erred in granting summary judgment against appellant on its contribution and indemnification claims against NSR. In *Lingo v. Ohio Cent. RR., Inc.*, 10th Dist. No. 05AP–206, 2006-Ohio-2268, 2006 WL 1230670, we affirmed.

{¶ 8} On December 6, 2005, appellant filed this suit to recover damages that it alleged it suffered due to appellees' negligence in their legal representation of appellant in the *Lingo* litigation. On October 2, 2007, appellant filed an amended complaint. The two plaintiffs were designated as "Ohio Central Railroad, Inc." and RCS, "individually and as subrogor [sic] of [appellant and Lloyds]." Appellant and RCS alleged that appellees failed to properly evaluate appellant's potential liability in the *Lingo* litigation, failed to properly develop a settlement and trial preparation strategy, failed to properly evaluate and preserve claims for contribution and indemnification, and failed to correctly advise appellant regarding Lingo's termination. Appellant and RCS sought, "individually and as subrogees," damages in excess of $860,000. Appellees filed a counterclaim seeking unpaid legal fees incurred during its representation of appellant with respect to the wrongful discharge claim.[1]

{¶ 9} In the amended complaint, appellant alleged that it had incurred $100,000 in damages for settlement of the wrongful-discharge claim, defense costs of over $50,000 in the wrongful-discharge claim, additional attorney fees of over $30,000 paid for new counsel to prepare for trial, and $750,000 to $1 million it claims it would have been able to recover in contribution from NSR and others. The amended complaint further alleged:

---

1. By notice filed August 18, 2008, appellees voluntarily dismissed their counterclaim pursuant to Civ.R. 41(A)(1)(a).

23. As a direct and proximate result of the Defendants' negligence Plaintiffs, individually and as subrogees or subrogors, suffered losses in an amount in excess of $1,200,000.

24. [Appellant] has agreed to pay to LLOYDS any sums recovered in this action against [appellees] to the extent necessary to reimburse it for the monies it unnecessarily expended on the defense of the claims asserted against [appellant] by LINGO as a result of the negligence of the Defendants, *i.e.*, LLOYDS is subrogated to the claims of [appellant] against [appellees].

25. [RCS] is LLOYDS' agent for purposes of collecting and enforcing its subrogation agreement with its insured [appellant].

{¶ 10} On October 10, 2007, appellees filed a motion for summary judgment with respect to appellant's and RCS's claims. The grounds for the motion were that (1) appellees committed no malpractice; (2) appellant and RCS suffered no damages proximately caused by any alleged negligence, because, in appellant's case, it would have had to pay the SIR regardless of whether their attorneys were negligent, and in RCS's case, it paid no monies at all; and (3) RCS had no standing to bring a negligence claim because it was not the victim of the alleged negligence, and it had not paid any money in connection with the *Lingo* litigation. Appellees argued that Lloyds was the real party in interest with respect to any losses it paid as part of the settlement and judgment in the *Lingo* litigation.

{¶ 11} On November 26, 2007, appellant filed a memorandum contra and attached thereto the affidavit of its legal expert, who opined that appellees had been negligent. Appellant also argued that RCS and Lloyds are "proper parties" because they are claiming subrogation rights and, pursuant to Civ.R. 19(A), they must be included in the litigation. Curiously, however, appellant never made Lloyds a party, even in the amended complaint, and never sought to add Lloyds as a party pursuant to Civ.R. 19.

{¶ 12} Appellant also argued that its damages are not limited to the $100,000 SIR because it is the agent for Lloyds and thereby has standing to assert Lloyds' subrogated interest in all damages that Lloyds ultimately suffered. Attached to the memorandum contra was the affidavit of Arthur Wooder, an insurance-claims expert, who stated that the policy requires that appellant transfer to USF & G any funds that it recovers from appellees. Appellant argued that it was entitled to recover all damages caused by appellees' negligence, regardless of who ultimately paid out these funds.

{¶ 13} RCS voluntarily dismissed its claims against appellees, pursuant to Civ.R. 41, on March 19, 2008. On that same date, appellant filed a supplemental memorandum contra in which it noted that appellees' motion for summary judgment needed to be decided only as to it, because it was the only remaining plaintiff.

{¶ 14} On August 8, 2008, the trial court issued a decision (but not an accompanying journal entry) granting appellees' motion for summary judgment. The trial court did not address the damages appellant sought that were paid by Lloyds and considered only the SIR. The court reasoned that because it was undisputed that appellant would have expended $100,000 in connection with the *Lingo* litigation regardless of whether appellees were negligent, and appellant did not expend any more than that amount in connection with the *Lingo* litigation, it had adduced no evidence that it suffered any damages proximately caused by appellees' alleged negligence.

{¶ 15} On September 9, 2008, appellant filed a motion for reconsideration, citing the standard for reconsideration applicable to App.R. 26 motions filed in courts of appeals. Appellant argued that it had relied upon the "collateral source rule" in opposing appellees' motion for summary judgment, and that the trial court had erred in not considering whether that rule precluded consideration of the fact that Lloyds had paid amounts in connection with the *Lingo* litigation beyond the $100,000 SIR. The first time that appellant had used the phrase "collateral source rule" was in its motion for reconsideration; however, it argued that it had invoked the rule in its memorandum contra to appellees' motion for summary judgment when it argued that it may recover damages caused by appellees' malpractice "regardless whether those damages were paid by [it] or its insurer, and regardless whether its insurers are subrogated."

{¶ 16} In their memorandum contra to appellant's motion for reconsideration, appellees argued that the trial court should not have applied the collateral source rule and that because Lloyds is the real party in interest with respect to all damages appellant sought that exceeded the SIR, the court was correct to have ignored these additional damages because Lloyds was not a party to the suit. Appellees cited *Shealy v. Campbell* (1985), 20 Ohio St.3d 23, 20 OBR 210, 485 N.E.2d 701, in which the Supreme Court of Ohio held, "An insurance company, which pays the entire amount of a judgment pursuant to a policy issued to an insured tortfeasor and thereafter becomes subrogated to that claim, is the sole real party in interest in a subsequent action brought against a joint tortfeasor for contribution pursuant to R.C. 2307.31(C)." Id. at syllabus.

{¶ 17} In its reply memorandum, appellant pointed out that *Shealy* remanded the case to the trial court with instructions to substitute the subrogated insurer as the plaintiff; it did not find that dismissal was warranted merely because the action had not been brought by the real party in interest. In so ruling, *Shealy* relied upon Civ.R. 17(A)'s admonition that "[n]o action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest."

Civ.R. 17(A). Appellant argued that because Lloyds had ratified the commencement of the litigation, the action could proceed in appellant's name. It attached to its reply memorandum the affidavit of Dave Gardner, who identified himself therein as an authorized representative and agent of Lloyds. He averred that Lloyds has subrogation rights to any amounts that appellant recovers against appellees, and that it consented to and ratified the commencement of this action and agreed to be bound by the result thereof.

{¶ 18} Later, appellant filed a motion to add Lloyds as a party-plaintiff pursuant to Civ.R. 17(A). It again argued that Civ.R. 17(A) allows it to prosecute the action on behalf of Lloyds even if Lloyds is the real party in interest. But it also argued that pursuant to Civ.R. 17(A), an action cannot be dismissed for failure to be prosecuted in the name of the real party in interest; and, because the rule requires that reasonable time be given for ratification, joinder, or substitution of the real party in interest, the trial court should permit appellant to add Lloyds as a plaintiff in the case.

{¶ 19} In their memorandum contra, appellees argued that appellant had already been given more than a reasonable amount of time to pursue joinder or ratification under Civ.R. 17(A), given that, months earlier, from the parties' summary judgment briefing had emerged the issue of whether appellant was confined to pursue only the amount it paid out for its SIR, or whether it could pursue, in its own name, the damages that Lloyds had incurred.

{¶ 20} In an entry journalized August 18, 2008, the trial court summarily denied both the motion for reconsideration and the motion to add Lloyds as a party. The court granted appellees summary judgment on all claims in appellant's complaint. Appellant timely appealed and advances two assignments of error as follows:

Assignment of Error No. 1:

The trial court erred to the substantial prejudice of plaintiff-appellant Ohio Central Railroad, Inc., in granting defendants-appellees Ronald L. Mason and the Mason Law Firm's motion for summary judgment on the ground that the plaintiff-appellant sustained no damages.

Assignment of Error No. 2:

Assuming that that [sic] the insurance company is the sole real party in interest, the trial court erred to the substantial prejudice of plaintiff-appellant Ohio Central Railroad, Inc., in failing to find a "ratification" by the plaintiff-appellant's insurer, Lloyds, in denying the plaintiffs-appellant's motion to join the insurance company to this action.

We scheduled oral argument in this case, but both parties notified this court that they waived their right to participate in oral argument. Consequently, the matter was submitted to this court on the parties' briefs only.

{¶ 21} We begin with appellant's first assignment of error, which challenges the trial court's grant of summary judgment. We review the trial court's grant of summary judgment de novo. *Coventry Twp. v. Ecker* (1995), 101 Ohio App.3d 38, 654 N.E.2d 1327. Summary judgment is proper only when the party moving for summary judgment demonstrates (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, when the evidence is construed in a light most favorable to the nonmoving party. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.* (1997), 78 Ohio St.3d 181, 183, 677 N.E.2d 343.

{¶ 22} For ease of discussion, our analysis divides the damages that appellant seeks into two parts: (1) the $100,000 SIR, and (2) the remaining damages it seeks, which, it is undisputed, were incurred by Lloyds. In support of its first assignment of error, appellant does not argue that the trial court erred in determining that there was no causal connection between appellees' alleged negligence and appellant's payment of its SIR. Rather, its arguments in support of its first assignment of error are focused solely on the second category of damages—those that were paid by Lloyds.

{¶ 23} Appellant argues that the collateral-source rule demands that the trial court ignore the fact that Lloyds paid any amounts under the policy in connection with the *Lingo* litigation. It argues that when the collateral source rule is applied in this case, the fact that damages were paid pursuant to the policy is irrelevant and, as such, genuine issues of material fact regarding causation and damages exist that preclude summary judgment.[2]

{¶ 24} The "collateral source rule * * * has been defined as 'the judicial refusal to credit to the benefit of the wrongdoer money or services received in reparation of the injury caused which emanates from sources other than the wrongdoer.'" *Hutchings v. Childress*, 119 Ohio St.3d 486, 2008-Ohio-4568, 895

---

2. Appellees argue that appellant waived any argument regarding the collateral source rule because it failed to raise the issue below. However, appellant did argue below that it is entitled to recover any damages proximately caused by appellees' negligence "regardless whether those damages were paid by the Ohio Central Railroad or its insurer, and regardless whether its insurers are subrogated." Though appellant did not denominate this argument as one based upon the "collateral source rule," we view this argument as sufficiently invoking the rule so as to avoid the effects of waiver.

N.E.2d 520, ¶ 30, quoting *Pryor v. Webber* (1970), 23 Ohio St.2d 104, 107, 263 N.E.2d 235.

{¶ 25} "Substantively, the collateral source rule is an exception to the general rule in tort actions that the measure of the plaintiff's damages is that which will make her whole. Through this exception, the plaintiff is allowed to receive more than the amount of damages she actually incurred. The rationale for the exception to the general rule is that benefits the plaintiff receives from a source wholly independent of the wrongdoer should not benefit the wrongdoer by reducing the amount of damages which a plaintiff might otherwise recover from him. As an evidentiary rule, the collateral source rule bars the introduction into evidence of collateral payments to the plaintiff in order to prevent the jury's consideration of such payments in determining the amount of damages." (Citations omitted.) *Klosterman v. Fussner* (1994), 99 Ohio App.3d 534, 538–539, 651 N.E.2d 64.

{¶ 26} The issue that appellant's first assignment of error presents is whether, in ruling on a motion for summary judgment in a legal-malpractice action in which the only plaintiff is the insured against whom a judgment was entered as a result of the alleged legal malpractice, the collateral-source rule precludes courts from considering damages that the *plaintiff's insurer*—not the plaintiff-insured—has paid pursuant to that insurance policy. In our view, the collateral-source rule has no application, and the trial court correctly eschewed consideration of any damages for which Lloyds had indemnified appellant.

{¶ 27} In *Cleveland Paint & Color Co. v. Bauer Mfg. Co.* (1951), 155 Ohio St. 17, 44 O.O. 59, 97 N.E.2d 545, the Supreme Court of Ohio held, "[A] subrogee who has paid an entire loss suffered by the insured must sue in his own name, as he is the only real party in interest." Id. at 25, 44 O.O. 59, 97 N.E.2d 545. In *Shealy,* the court reaffirmed its holding in *Cleveland Paint,* holding, "An insurance company, which pays the entire amount of a judgment pursuant to a policy issued to an insured tortfeasor and thereafter becomes subrogated to that claim, is the sole real party in interest in a subsequent action brought against a joint tortfeasor." Id. at syllabus.

{¶ 28} Congruently, we have held that when the plaintiff insured admits that *the insurer has paid all of the damages,* except for the insured's contractually required deductible, and that the insurer is subrogated to the insured's rights, the trial court properly limits the insured's recovery to the amount of the deductible. *Ward v. Tea* (June 13, 1989), 10th Dist. No. 88AP–1147, 1989 WL 65410. In such a case, the " 'insurer may prosecute a separate action against the party causing such injury to the extent of the amount paid under [the insurance policy].' " Id., quoting *Hoosier Cas. Co. v. Davis* (1961), 172 Ohio St. 5, 15 O.O.2d

45, 173 N.E.2d 349, paragraph two of the syllabus; see also *Cleveland Paint*, 155 Ohio St. at 25, 44 O.O. 59, 97 N.E.2d 545. In other words, the insured is the sole real party in interest with respect to its deductible or, in this case, its SIR, while the insurer is the sole real party in interest with respect to the amounts it paid pursuant to its contract with the insured. Thus, these parties may prosecute separate actions or a single action as coplaintiffs, but in either case, each is the sole real party in interest with respect to the claim for damages that it alone incurred.

{¶ 29} This case fits squarely within the holding in *Ward* because appellant admits that Lloyds has paid all its damages except for the SIR, and it is undisputed that Lloyds is contractually subrogated to appellant's rights for the amounts Lloyds paid. Though appellant and Lloyds share an interest in the sense that they can both seek to impose malpractice liability upon appellees, each has its own distinct and separate interest to pursue. Thus, under *Ward*, it was proper for the trial court to limit appellant's damages to the amount of the SIR, which, in this context, is analogous to a deductible.[3]

{¶ 30} For this reason, appellant was not entitled to seek recovery of amounts that Lloyds paid. Rather, it was entitled to seek recovery of its SIR only. On appeal, appellant does not challenge the summary judgment as to its SIR. Accordingly, the trial court correctly granted summary judgment in favor of appellees and against appellant on appellant's legal malpractice claim. For this reason, appellant's first assignment of error is overruled.

{¶ 31} We now turn to appellant's second assignment of error. Therein, appellant argues that assuming that Lloyds is the real party in interest with respect to the amounts Lloyds paid—the only category of damages with which this appeal is concerned—the trial court erred in not allowing a ratification to permit the addition of Lloyds as a party-plaintiff.

---

3. "Self-insured retentions (SIRs) and deductibles serve the same purpose, allotting a portion of the risk to the insured." Susan N.K. Gummow, No "SIR"! Insurer Can't Avoid Payment if Insured Files for Bankruptcy, April 2005, 24–3 Am.Bankr.Inst.J. 18. However, they operate in slightly different ways, in terms of triggering the insurer's duty to indemnify. "Self-insured retention is defined as 'the amount of an otherwise-covered loss that is not covered by an insurance policy and that must be paid before the insurer will pay benefits' [while] * * * [a] deductible is the amount of risk undertaken by the insured under a traditional liability insurance policy. It is the specific monetary amount set by the insurance policy for which the insured is responsible. The deductible * * * does not prevent the triggering of coverage by the policy. * * * The insurer has a duty to indemnify without regard to the deductible provision. Under this scenario, the insurer would be responsible for payment of a claim from 'dollar one' and then must seek reimbursement for the amount of the deductible from the insurer. This differs from a SIR, where the insurer would only be liable for the amounts due above the limits of the SIR." Id.

 {¶ 32} A decision to allow or prohibit ratification under Civ.R. 17(A) is subject to review for abuse of discretion. *Arabian Am. Oil Co. v. Scarfone* (C.A.11, 1991), 939 F.2d 1472, 1477, citing *ICON Group, Inc. v. Mahogany Run Dev. Corp.* (C.A.3, 1987), 829 F.2d 473, 476, fn. 3.[4] Civ.R. 17 requires every civil action to be prosecuted in the name of the real party in interest. *State ex rel. Jones v. Suster* (1998), 84 Ohio St.3d 70, 77, 701 N.E.2d 1002. "The requirement in Rule 17(a) that an action be prosecuted in the name of a 'real party in interest' is based on the principle that the pleadings in a case 'should be made to reveal and assert the actual interest of the plaintiff, and to indicate the interests of any others in the claim.'" *Agri–Mark, Inc. v. Niro, Inc.* (D.Mass.2000), 190 F.R.D. 293, 295, quoting *United States v. Aetna Cas. & Sur. Co.* (1949), 338 U.S. 366, 382, 70 S.Ct. 207, 94 L.Ed. 171.

{¶ 33} "The purpose behind [Civ.R. 17] is 'to enable the defendant to avail himself of evidence and defenses that the defendant has against the real party in interest, and to assure him finality of the judgment, and that he will be protected against another suit brought by the real party in interest on the same matter.'" Id., citing *Shealy*, 20 Ohio St.3d at 24–25, 20 OBR 210, 485 N.E.2d 701. Moreover, like all of the civil rules, Civ.R. 17(A) "shall be construed and applied to effect just results by eliminating delay, unnecessary expense and all other impediments to the expeditious administration of justice." Civ.R. 1(B).

 {¶ 34} "The real party in interest is the party who will directly be helped or harmed by the outcome of the action." *Zuckerman v. Gray*, 11th Dist. No. 2008–T–0022, 2009-Ohio-1319, 2009 WL 738027, ¶ 13. "The person must have more than an interest in the case. He or she must have some interest in the subject matter of the litigation or is the person who can discharge the claim on which the suit is brought." *Travelers Indemn. Co. v. R.L. Smith Co.*, 11th Dist. No. 2000–L–014, 2001 WL 369677. "It has been long recognized at common law that the real party in interest was the person who, by substantive law, possessed the right to be enforced." 1 Klein & Darling, Baldwin's Ohio Civil Practice (2d Ed.2004) 927, Section 17:4.

 {¶ 35} As we noted above, where an insurance company pays the entire amount of a judgment, pursuant to a policy issued to an insured tortfeasor, and thereby becomes subrogated to that claim, the insurance company is the sole real party in interest in a subsequent action brought to recover the amount of that

---

4. Civ.R. 17(A) is patterned after Fed.R.Civ.P. 17(A). See 1975 Staff Note Civ.R. 17(A) ("The first three sentences of Rule 17(A) [are] (based upon Federal Rule 17(a))[.] * * * The fourth sentence of Rule 17(A) is borrowed directly from a 1966 amendment of Federal Rule 17(a)."). Where an Ohio procedural rule is patterned after a federal counterpart, it is appropriate to use federal case law in analyzing the Ohio civil rule. See, e.g., *Grau v. Kleinschmidt* (1987), 31 Ohio St.3d 84, 31 OBR 250, 509 N.E.2d 399.

loss. *Cleveland Paint;* see also *Goldney v. Byrd,* 8th Dist. No. 88285, 2007-Ohio-1985, 2007 WL 1219261; *Keegan v. Sneed* (Oct. 16, 2000), 12th Dist. No. CA2000-02–029, 2000 WL 1530879. Thus, Lloyds is the real party in interest vis à vis any amounts it paid in connection with the *Lingo* litigation.

{¶ 36} When the present action was commenced, there were two distinct claims—a malpractice claim seeking recovery of the SIR, with respect to which appellant is the real party in interest, and a separate malpractice claim seeking recovery of the amounts Lloyds paid, with respect to which Lloyds is the real party in interest. Appellant's motion to add Lloyds as a party sought to correct the problem that the real party in interest with respect to the second claim was not present in the suit.

{¶ 37} "Civ.R. 17 * * * only allows a plaintiff to cure a real-party-in-interest problem by (1) showing that the real party in interest has ratified the commencement of the action, or (2) joining or substituting the real party in interest." *Wells Fargo Bank v. Byrd,* 178 Ohio App.3d 285, 2008-Ohio-4603, 897 N.E.2d 722, ¶ 11. Appellant argues that the trial court should have allowed it to cure through ratification. For several reasons, we disagree.

{¶ 38} First, "[t]he sole authorization for ratification in the * * * rules is the provision in Rule 17(a) for ratification as an alternative to dismissal for failure to name the real party in interest. If the court has no authority to dismiss, it has no authority to require the insurer's ratification as an alternative." June F. Entman, Compulsory Joinder of Compensating Insurers: Federal Rule of Civil Procedure 19 and the Role of Substantive Law (1994), 45 Case W.Res.L.Rev. 1, 61. Where, as here, the substantive law permits the insured to sue in its own name to recover damages for which it is the sole real party in interest,[5] the court has no authority to dismiss for failure to name the real party in interest. Thus, it has no basis upon which to allow ratification, even if, as here, the insurer is also entitled to prosecute an action as subrogee. Accordingly, the trial court did not abuse its discretion in refusing to allow ratification.

{¶ 39} Even in cases in which the court does have authority to dismiss, many federal courts have held that ratification is still not an appropriate alternative to naming the real party in interest because Rule 17(a) authorizes ratification only " 'to avoid forfeiture and injustice when an understandable mistake has been made in selecting the parties in whose name the action should be brought.' " *Agri–Mark,* 190 F.R.D. at 296, quoting 6A Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure (1990),

---

5. See ¶ 28–29, *supra.*

Section 1555, 412; *Hobbs v. Police Jury of Morehouse Parish* (E.D.La.1970), 49 F.R.D. 176, 180; *Del Re v. Prudential Lines, Inc.* (C.A.2, 1982), 669 F.2d 93, 96.

{¶ 40} The Fed.R.Civ.P. 17 advisory committee's note accompanying the 1966 amendment stated, "Modern decisions are inclined to be lenient when an honest mistake has been made in choosing the party in whose name the action is to be filed. * * * The provision should not be misunderstood or distorted. It is intended to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made." [6]

{¶ 41} "While a literal interpretation of * * * Rule 17(a) would make it applicable to every case in which an inappropriate plaintiff was named, the Advisory Committee's Notes make it clear that this provision 'is intended to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made.' Fed.R.Civ.P. Advisory Committee Notes, 1966 Amendment. * * *. When determination of the correct party to bring the action was not difficult and when no excusable mistake was made, the last sentence of Rule 17(a) is inapplicable and the action should be dismissed." *Feist v. Consol. Freightways Corp.* (E.D.Pa.1999), 100 F.Supp.2d 273, 275; see also *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.* (C.A.2, 1997), 106 F.3d 11, 20; *Whitcomb v. Ford Motor Co.* (M.D.Pa.1978), 79 F.R.D. 244, 245; *Wieburg v. GTE Southwest, Inc.* (C.A.5, 2001), 272 F.3d 302, 308 ("In accordance with the Advisory Committee's note, most courts have interpreted the last sentence of Rule 17(a) as being applicable only when the plaintiff brought the action in her own name as the result of an understandable mistake, because the determination of the correct party * * * is difficult"); *Intown Properties Mgt.,*

---

**6.** Professor Entman notes that "[r]atification is an anomaly that slipped into Rule 17(a) in 1966 when admiralty actions were brought under the Federal Rules of Civil Procedure. Prior to the 1966 amendments, courts * * * had taken a lax approach to the naming of parties plaintiff because of the difficulty of identifying, at least prior to the expiration of applicable statutes of limitation, the numerous parties who may have enforceable claims arising from the loss of a ship's cargo. * * * So long as the proper plaintiff or plaintiffs ratified the action before judgment, the action could be saved and judgment entered in the name of the plaintiff on the basis of the unnamed parties' claims. * * * In 1964 the Advisory Committee on Admiralty Rules proposed the merger of civil and admiralty practice under the Federal Rules of Civil Procedure. The Committee * * * recommended several amendments to the Federal Rules of Civil Procedure to preserve, after the merger, certain distinct admiralty practices. Among the recommendations by the committee was an amendment to Rule 17(a) that would have preserved the practice of relation-back of claims through the formerly unnamed parties' ratification, joinder or substitution. * * * What apparently passed unnoticed, however, was that the provision for ratification, as an alternative to joinder or substitution, introduced into Rule 17(a) a practice that was fundamentally at odds with the rule's basic proposition that every action shall be prosecuted in the name of the real party in interest. The device of ratification * * * was the very practice, however, that the real party in interest rule was intended to abolish." (Citations omitted.) Entman, Compulsory Joinder of Compensating Insurers: Federal Rule of Civil Procedure 19 and the Role of Substantive Law, 45 Case W.Res.L.Rev. at 62–64.

*Inc. v. Wheaton Van Lines, Inc.* (C.A.4, 2001), 271 F.3d 164, 171; *Advanced Magnetics* at 20 ("the district court retains some discretion to dismiss an action where there was no semblance of any reasonable basis for the naming of an incorrect party"); *Lans v. Gateway 2000, Inc.* (D.D.C.1999), 84 F.Supp.2d 112, 120 ("it is appropriate to liberally grant leave to substitute a real party in interest when there has been an honest mistake in choosing the nominal plaintiff, meaning that determination of the proper party was somehow difficult at the time of the filing of the suit, or that the mistake is otherwise understandable"); *Metal Forming Technologies v. Marsh & McLennan Co.* (S.D.Ind.2004), 224 F.R.D. 431.

{¶ 42} But decisions "allowing parties to use the ratification device deliberately to avoid naming an insurance company as a plaintiff are inconsistent with the expressed legislative intent that the 1966 amendment [adding the last sentence to Rule 17(a) ] be available only in cases of mistake." (Footnote omitted.) Entman, More Reasons for Abolishing Federal Rule of Civil Procedure 17(a): The Problem of the Proper Plaintiff and Insurance Subrogation (1990), 68 N.C.L.Rev. 893, 907–908. Moreover, ratification that sanctions avoidance of party status allows the real party in interest to control the litigation but not be subject to provisions for assessments of costs and sanctions, or to certain discovery procedures that may be used only against parties to the litigation (e.g., Civ.R. 33, governing interrogatories to parties, and Civ.R. 36, governing requests for admissions).

{¶ 43} In this case, it is not apparent, and appellant made no attempt to demonstrate to the trial court, that the failure to name the real party in interest with respect to the claim for losses other than the SIR was the result of an honest mistake under circumstances in which it was difficult to ascertain the identity of the proper party. For this reason, too, the trial court's refusal to allow ratification was not an abuse of discretion.

{¶ 44} Appellant's motion to add Lloyds also argued, in the alternative, that the court should allow the addition of Lloyds through joinder. Civ.R. 19 governs joinder of parties needed for just adjudication. Civ.R. 19(A) states, "A person who is subject to service of process shall be joined as a party in the action if * * * he has an interest relating to the subject of the action as an assignor, assignee, subrogor, or subrogee. If he has not been so joined, the court shall order that he be made a party upon timely assertion of the defense of failure to join a party as provided in Rule 12(B)(7)."

{¶ 45} Though this court has recognized a timeliness requirement for motions to join the real party in interest,[7] the Supreme Court of Ohio has noted

---

7. *Foster v. Blue Cross/Blue Shield of Ohio* (Dec. 11, 1997), 10th Dist. No. 97APE03–410, 1997 WL 770997.

that "Civ.R. 19(A) encourages, and Ohio decisional law favors, a policy of liberally granting joinder." *Hambleton v. R.G. Barry Corp.* (1984), 12 Ohio St.3d 179, 184, 12 OBR 246, 465 N.E.2d 1298. If a trial court determines that a party is indispensable to the action, that the party is subject to service of process, and that the nonjoinder issue has not been waived, then the court has no discretion under Civ.R. 19(A) and (B), and the party must be joined or the case dismissed. *State ex rel. Gill v. Winters* (1990), 68 Ohio App.3d 497, 503, 589 N.E.2d 68. "[D]ismissal due to a party's failure to join a necessary party is warranted only where the defect cannot be cured." *State ex rel. Bush v. Spurlock* (1989), 42 Ohio St.3d 77, 81, 537 N.E.2d 641.

{¶ 46} Thus, with these authorities in mind, the trial court had a duty to determine whether the defect of parties could be cured. To do so, the trial court was required to determine whether Lloyds was indispensable to the action (by virtue of its holding an interest as a subrogee, pursuant to Civ.R. 19(A)(3)), whether Lloyds was subject to service of process, and whether the nonjoinder issue had been waived. *Gill;* see also *Hamler v. Marshall* (1986), 34 Ohio App.3d 306, 518 N.E.2d 575; *Chambers v. Stevenson* (1991), 71 Ohio App.3d 566, 594 N.E.2d 1097. Here, the trial court summarily denied appellant's motion to join Lloyds and failed to address any of these issues. Such a summary disposition of the joinder issues and subsequent dismissal of the action warrant reversal and remand for the trial court to determine whether Lloyds should be joined in accordance with the criteria set forth in Civ.R. 19. *Chambers* at 569–570, 594 N.E.2d 1097. Accordingly, appellant's second assignment of error is sustained.

{¶ 47} In summary, we overrule appellant's first assignment of error, sustain the second assignment of error, affirm in part and reverse in part the judgment of the Franklin County Court of Common Pleas, and remand this cause to that court for further proceedings in accordance with law and consistent with this decision.

Judgment affirmed in part
and reversed in part,
and cause remanded.

KLATT, J., concurs.

BRYANT, J., concurs separately.

BRYANT, Judge, concurring.

{¶ 48} While I agree with the majority's conclusion that the collateral-source rule does not apply here, I cannot fully agree with the remainder of the decision and so concur separately.

{¶ 49} The decision in *Morelli v. Walker*, 8th Dist. No. 88706, 2007-Ohio-4832, 2007 WL 2729811, suggests ratification under Civ.R. 17 may be appropriate in this matter, as *Morelli* concluded that joinder of a subrogated insurance company was not necessary where the company provided a ratification affidavit, as did Lloyds in this case. We, however, need not resolve that issue, given the procedural posture of this case.

{¶ 50} More specifically, all agree that Lloyds is the real party in interest here. On the facts of this case, I have difficulty conceiving of a rationale that the trial court could apply to deny on remand the motion to join Lloyds as a party. See Civ.R. 19(A) ("[a] person who is subject to service of process shall be joined as a party in the action if * * * (3) he has an interest relating to the subject of the action as an assignor, assignee, subrogor, or subrogee"). Accordingly, I would reverse the judgment of the trial court and remand with instructions to join Lloyds as a real party in interest.