**VARAVVAS et al., Appellants and Cross–Appellees,**

v.

**MULLET CABINETS, INC., Appellee and Cross–Appellant.**

[Cite as *Varavvas v. Mullet Cabinets, Inc.*, 185 Ohio App.3d 321, 2009-Ohio-6962.]

Court of Appeals of Ohio,
Fifth District, Stark County.

No. 2008CA00240.

Decided Dec. 28, 2009.

James P. Adlon and Kevin R. L'Hommedieu, for appellants and cross-appellees.

Matthew P. Mullen and Owen J. Rarric, for appellee and cross-appellant.

———————

DELANEY, Judge.

{¶ 1} Appellants and cross-appellees, Dianne and Anthony Varavvas, appeal the Stark County Court of Common Pleas judgment in favor of appellee and cross-appellant, Mullet Cabinets.

## STATEMENT OF THE FACTS AND THE CASE

{¶ 2} When appellants purchased their home in 1998, they wanted to update the kitchen and bathrooms. Appellants hired Doug Prestier as their general contractor during the renovations. Prestier recommended to appellants that they work with appellee for the kitchen and bathroom cabinetry.

{¶ 3} Dianne Varavvas met with a representative of appellee at appellee's store located in Millersburg, Ohio. Dianne Varavvas asked whether appellee could construct glazed cabinets similar to those she found in a magazine. Glazing is a method of painting cabinetry. Appellee's representative stated that appellee could do glazed cabinets and recommended birch wood for the cabinets because the grain would not show through the glazing.

{¶ 4} Appellants contracted with appellee to build custom cabinets for the kitchen, the master bath, the second-floor bath, and the powder room. Because appellants requested custom cabinets, appellee and appellants exchanged multiple plans and proposals for the project before developing a completed plan. Dianne Varavvas testified that she reviewed the proposals and plans. The project estimates issued by appellee to appellants on January 5, 1999, and January 7, 1999, read, "birch wood." The project proposals issued by appellee to appellant on February 3, 1999, and the final pricing proposal issued on February 18, 1999 read, "birch wood." On plans showing the layout of the cabinetry dated February 10, 1999, appellee described the cabinets in the master bath as "birch" for wood, but also described them as "Solidor," a type of manufactured wood that lacks the joints that a hardwood does. Appellee installed the cabinets and issued an invoice to appellants on March 31, 1999. The invoice price was $27,894.

{¶ 5} In 1999, shortly after the cabinets were installed, appellants noticed that the cabinets easily chipped and cracked and began to discolor. Appellee made minor repairs to the cabinets to address the paint-related issues. Sometime in late 2006 or early 2007, appellants notified appellee about discoloration in the cabinets. Appellee's president, Vince Mullet, examined the cabinets and deter-

mined that the paint used to glaze the cabinets was defective and had been taken off the market. Appellee, with cooperation from the paint manufacturer, agreed to refinish the cabinets at no cost to appellants.

{¶ 6} In February 2007, while one of appellee's representatives was at appellants' home making the repairs to the cabinets based on the defective paint, Dianne Varavvas heard him say that particle board painted better than wood. Dianne Varavvas asked Prestier to come to the home to determine what the cabinets were made of because it was her understanding that appellee had constructed the cabinets entirely with birch hardwood. In the master bath, it was determined that the doors to the cabinets were made of Solidor. In the kitchen, Prestier determined that the cabinet drawers and faces were made of birch hardwood. The cabinet boxes were birch plywood with a birch veneer.

{¶ 7} On September 17, 2007, appellants filed their complaint against appellee, alleging breach of contract, violation of the Ohio Consumer Sales Practices Act ("CSPA"), and fraud. Appellants' complaint referred only to the lack of birch hardwood in the cabinets, not the discoloration of the cabinets due to the defective paint.

{¶ 8} Appellee moved for summary judgment on appellants' claim under the CSPA, arguing that it was barred by the statute of limitations. The trial court denied the motion. The case proceeded to trial before a jury.

{¶ 9} At trial, Diane Varavvas testified that she believed "birch wood" cabinets meant that every part of the cabinet would be constructed out of solid birch hardwood. She could not recall any representative from appellee telling her otherwise; nor did she recall asking appellee to clarify. Over appellants' objection, Prestier, as appellants' witness, and Vince Mullet, appellee's witness, testified that as an industry standard, cabinets are not constructed out of 100 percent hardwood. The industry standard for birch cabinets is to provide cabinets with solid birch exterior door fronts, drawer fronts, and frames. The interior cabinet boxes are usually made with plywood or medium density fiber ("MDF") board with a birch veneer. Appellants' cabinets were constructed pursuant to the industry standards.

{¶ 10} At the close of appellants' case, appellee moved for a directed verdict on each of appellants' claims. Appellants did not oppose appellee's motion for directed verdict on their cause of action for fraud. The trial court granted a directed verdict on appellants' claim under the Consumer Sales Practices Act and denied the motion for directed verdict on the breach of contract. The matter went to the jury, and the jury returned a verdict for appellee. The trial court filed its judgment on October 2, 2008.

{¶ 11} It is from this decision the parties now appeal.

## ASSIGNMENTS OF ERROR

{¶ 12} Appellants raise three assignments of error:

{¶ 13} "I. The trial court erred as a matter of law when it dismissed the Varavvases' CSPA claim based on the statute of limitations.

{¶ 14} "II. The trial court erred in allowing Mullet to introduce evidence of industry standard when the terms of the contract were clear and unambiguous.

{¶ 15} "III. The trial court abused its discretion in excluding an exhibit that contained an admission of fault by Mullet." ·

{¶ 16} Appellee raises one assignment of error on cross-appeal:

{¶ 17} "I. The trial court erred in denying defendant/cross-appellant's motion for directed verdict on plaintiff/cross-appellee's breach of contract claim at the close of plaintiff's case in chief."

## I

{¶ 18} Appellants argue in their first assignment of error that the trial court erred in granting appellee's motion for directed verdict as to appellants' cause of action under the CSPA. We disagree.

{¶ 19} Civ.R. 50 states: "When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

{¶ 20} A motion for directed verdict presents a question of law, not fact, even though we review and consider the evidence. *O'Day v. Webb* (1972), 29 Ohio St.2d 215, 58 O.O.2d 424, 280 N.E.2d 896, paragraph three of the syllabus. Thus, we review a motion for directed verdict using the de novo standard of review. *Cleveland Elec. Illum. Co. v. Pub. Util. Comm.* (1996), 76 Ohio St.3d 521, 523, 668 N.E.2d 889.

{¶ 21} Appellee moved for directed verdict on appellant's CSPA claim based on the statute of limitations. Appellants brought their claim under the CSPA arguing that appellee committed an unfair, deceptive, or unconscionable act in installing cabinets that it falsely represented were of a certain nature or quality when they were not, which act was ongoing and continuing, all in violation of R.C. 1345.01 et seq.

{¶ 22} The Ohio Supreme Court has explained that the CSPA does the following:

{¶ 23} "[P]rohibits suppliers from committing either unfair or deceptive consumer sales practices or unconscionable acts or practices as catalogued in R.C. 1345.02 and 1345.03. In general, the CSPA defines 'unfair or deceptive consumer sales practices' as those that mislead consumers about the nature of the product they are receiving, while 'unconscionable acts or practices' relate to a supplier manipulating a consumer's understanding of the nature of the transaction at issue." *Johnson v. Microsoft Corp.*, 106 Ohio St.3d 278, 2005-Ohio-4985, 834 N.E.2d 791, at ¶ 24.

{¶ 24} The CSPA is a remedial law and, as such, must be liberally construed. *Whitaker v. M.T. Automotive, Inc.*, 111 Ohio St.3d 177, 2006-Ohio-5481, 855 N.E.2d 825, at ¶ 11, citing *Einhorn v. Ford Motor Co.* (1990), 48 Ohio St.3d 27, 29, 548 N.E.2d 933.

{¶ 25} R.C. 1345.02(A) states, "No supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction. R.C. 1345.02(B) enumerates, without limitation, certain specific deceptive acts or practices. *Montoney v. Lincoln Logs, Ltd.*, Franklin App. No. 06AP–284, 2007-Ohio-236, 2007 WL 155451, ¶ 25. Appellants refer to R.C. 1345.02(B)(2) in arguing that appellee engaged in a deceptive act or practice when it did not use 100 percent birch hardwood in constructing appellants cabinets:

{¶ 26} "[T]he act or practice of a supplier in representing any of the following is deceptive:

{¶ 27} " * * *

{¶ 28} "(2) That the subject of a consumer transaction is of a particular standard, quality, grade, style, prescription, or model, if it is not."

{¶ 29} The CSPA establishes the statute of limitations for bringing a claim:

{¶ 30} "An action under sections 1345.01 to 1345.13 of the Revised Code may not be brought more than two years after the occurrence of the violation which is the subject of suit, or more than one year after the termination of proceedings by the attorney general with respect to the violation, whichever is later." R.C. 1345.10(C).

{¶ 31} The statute of limitations commences to run from the date of the occurrence of the violation, which is not necessarily the date of any underlying transaction. *Montoney*, 2007-Ohio-236, 2007 WL 155451, at ¶ 26, citing *Luft v. Perry Cty. Lumber & Supply Co.*, Franklin App. No. 02AP–559, 2003-Ohio-2305, 2003 WL 21027291, ¶ 27. The Tenth District Court of Appeals clarified that the "General Assembly explicitly recognized that a CSPA violation may occur before,

during, or after the underlying consumer transaction.  R.C. 1345.02(A) and R.C. 1345.03(A).  No discovery rule applies to claims for damages under the CSPA; 'R.C. 1345.10(C) sets forth an absolute two-year statute of limitations for such damages actions.' "  *Montoney* at ¶ 26, quoting *Luft* at ¶ 25.

{¶ 32} The issue before us then is when the appellants' CSPA claim accrued and when the two-year statute of limitations period began to run.  Appellants filed their complaint on September 17, 2007.  Accordingly, to be timely, appellants' CSPA claim must be premised on violations that occurred after September 17, 2005.

{¶ 33} The sale and installation of the cabinets occurred in 1999.  Appellants acknowledge that a CSPA claim based on the 1999 sale and installation of cabinets is time-barred under the CSPA;  however, appellants argue that that is not their claim.  Appellants state that their claim is based upon the February 2007 repair of the cabinets due to the discoloration when appellee discovered that the cabinets were not constructed with 100 percent birch hardwood pursuant to the terms of the contract.

{¶ 34} The trial court granted appellee's motion for directed verdict on the CSPA claim because it found that the February 2007 repair was not a "consumer transaction" within the definition of the CSPA.  R.C. 1345.01(A) defines a "consumer transaction" as "a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things."  Appellants agree that the February 2007 repair was not a "consumer transaction," but rather a "violation" of the CSPA that occurred after the underlying consumer transaction.  Appellants state that appellee engaged in conduct during the applicable limitations period that could be construed as a deceptive act or practice.  Appellants rely on the case of *Keiber v. Spicer Constr. Co.* (May 28, 1999), Greene App. No. 98CA23, 1999 WL 335140, to argue that their CSPA claim is not time-barred.

{¶ 35} In *Keiber*, the Second District Court of Appeals concluded that a CSPA claim was not time-barred because the evidence demonstrated that the defendant, who had entered into a contract with the plaintiff for the purchase of property and construction of a new home, continued to represent that it would fix items that needed repair after the real estate transfer closed and within two years prior to the plaintiff's filing a complaint.  The court stated, "These continued representations that Spicer Construction would fix the items that needed repair constitute 'an unfair or deceptive act or practice' after the transaction."

{¶ 36} The determination of whether the violation occurred within the statute of limitations is not dependent on whether there is a continuing relationship between the parties, but rather whether there is evidence of conduct constituting

deceptive or unconscionable acts occurring within the two-year statute-of-limitations period. *Montoney*, 2007-Ohio-236, 2007 WL 155451, at ¶ 38.

{¶ 37} Upon review of the trial record, we find no evidence of a deceptive or unconscionable act within the two-year statute of limitations period. The issue as brought by appellants in the case is whether appellee engaged in a deceptive or unconscionable act when it constructed and installed cabinets for appellants that were not made of 100 percent birch hardwood. Appellants assert that appellee knew that the cabinets were to be made of 100 percent birch hardwood pursuant to the contract and discovered that the cabinets were not 100 percent birch hardwood in February 2007. Appellants state that when appellee repainted the cabinets and did not remedy its failure to use 100 percent birch hardwood, the CSPA violation occurred. We find the evidence presented at trial refutes this argument. As Vince Mullet testified on behalf of appellee, appellee did not construct appellants' cabinets with 100 percent birch hardwood because that was not how appellee constructed cabinets. We find that the statute of limitations commenced to run in 1999 when appellee constructed and installed the cabinets because it was at that time that the alleged CSPA violation occurred. Appellants discovered in February 2007 that the cabinets were not 100 percent birch hardwood. As stated above, there is no discovery rule under which the statute of limitations can be tolled.

{¶ 38} Therefore, after construing the evidence most favorably to appellants, we find that reasonable minds can only reach the conclusion that appellants' CSPA claim was brought beyond the two-year statute of limitations. We find no evidence in the present case to find as in *Keiber* that appellee engaged in a deceptive act after the date of the underlying transaction. The trial court did not err in sustaining appellee's motion for directed verdict on appellants' claim under the CSPA.

{¶ 39} Appellants' first assignment of error is overruled.

## II

{¶ 40} Appellants argue in their second assignment of error that the trial court abused its discretion in allowing the introduction of evidence concerning the industry standards in the construction of cabinets. We disagree.

{¶ 41} The admission or exclusion of evidence rests within the sound discretion of the trial court. *State v. Sage* (1987), 31 Ohio St.3d 173, 31 OBR 375, 510 N.E.2d 343. A reviewing court must not disturb a trial court's evidentiary ruling unless the ruling is found to be an abuse of discretion. Id., citing *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 404 N.E.2d 144. An abuse of discretion connotes more than an error of law or judgment; it implies that the

court's attitude is unreasonable, arbitrary, or unconscionable. *Adams* at 157, 16 O.O.3d 169, 404 N.E.2d 144.

{¶ 42} At trial, Diane Varavvas testified as to her understanding of what "birch wood" meant when she contracted for custom-made cabinets with appellee. It was her understanding that the cabinets would be made with 100 percent birch hardwood and not MDF, Solidor, or plywood. Id. She stated that no one associated with appellee informed her that appellee would use different materials, including birch hardwood, to construct the cabinets. Id.

{¶ 43} Over appellants' objection, the trial court allowed Mullet to testify on direct and Prestier on cross-examination, regarding evidence of what the industry standards are for the construction of "birch wood" cabinets. The witnesses testified that in 1999, when the cabinets were constructed, the cabinet boxes and interior of cabinets would be constructed with a birch plywood or MDF with a birch veneer. The doors and fronts to the cabinets would be made of solid birch. It is not industry practice to construct cabinets out of 100 percent hardwood.

{¶ 44} Appellants argue that because the term of the contract as to "birch wood" was clear, appellee should not have been permitted to introduce extrinsic evidence of industry standards or practice. In opposition, appellee argues that the contract between appellants and appellee involved the sale of goods; therefore, the proceeding is governed under the Uniform Commercial Code, Article II (R.C. Chapter 1302), which permits evidence of usage of trade to explain or interpret contractual terms. We agree.

{¶ 45} Ohio courts have found that the Uniform Commercial Code, Article II is applicable to the sale of custom-made goods. See *David v. Ultra–Lite, Inc.* (Mar. 2, 1984), Lucas App. No. L–83–322, 1984 WL 7792 (sale of custom-made windows is a contract for sale of goods to which R.C. Chapter 1302 [UCC Article II] applies); *George v. Fannin* (1990), 67 Ohio App.3d 703, 588 N.E.2d 195 (R.C. Chapter 1302 applied to contract to manufacture and install custom-made draperies); *Ferjutz v. Habitat Wallpaper & Blinds, Inc.* (July 3, 1996), Cuyahoga App. No. 69495, 1996 WL 370670 (R.C. Chapter 1302 applied to contract for sale of custom-fit blinds).

{¶ 46} R.C. 1302.05 sets out the parol evidence rule, which is applicable to contracts for the sale of goods:

{¶ 47} "Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented:

{¶ 48} "(A) by course of dealing or usage of trade as provided in section 1301.11 of the Revised Code or by a course of performance as provided in section 1302.11 of the Revised Code;  and

{¶ 49} "(B) by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement."

{¶ 50} R.C. 1301.11 states:

{¶ 51} " * * *

{¶ 52} "(B) A usage of trade is any practice or method of dealing having such regularity of observance in a place, vocation, or trade as to justify an expectation that it will be observed with respect to the transaction in question.  The existence and scope of such a usage are to be proved as facts.  If it is established that such a usage is embodied in a written trade code or similar writing, the interpretation of the writing is for the court.

{¶ 53} "(C) A course of dealing between parties and any usage of trade in the vocation or trade in which they are engaged or of which they are or should be aware give particular meaning to and supplement or qualify terms of an agreement.

{¶ 54} "(D) The express terms of an agreement and an applicable course of dealing or usage of trade shall be construed wherever reasonable as consistent with each other;  but when such construction is unreasonable express terms control both course of dealing and usage of trade and course of dealing controls usage of trade.

{¶ 55} "(E) An applicable usage of trade in the place where any part of performance is to occur shall be used in interpreting the agreement as to that part of the performance.

{¶ 56} "(F) Evidence of a relevant usage of trade offered by one party is not admissible unless and until he has given the other party such notice as the court finds sufficient to prevent unfair surprise to the latter."

{¶ 57} While we find the term "birch wood" as used in the contract to construct the cabinets to be unambiguous in and of itself, we find that the trial court did not abuse its discretion in permitting the testimony of Prestier and Mullet to explain usage of the trade or industry practice of constructing cabinets.  As stated in R.C. 1301.11, the existence and scope of the usage of trade were to be proved as facts.  Both Prestier and Mullet were subject to cross-examination on the usage of trade, and the matter was presented to the jury.

{¶ 58} We further find that appellants have not raised the manifest weight of the evidence as an assignment of error, thereby preventing this court from addressing appellants' argument from this prospective.

{¶ 59} Appellants' second assignment of error is overruled.

## III

{¶ 60} Appellants argue in their third assignment of error that the trial court erred in excluding appellants' Exhibit 6 from being presented as evidence of appellee's admission of fault. We disagree.

{¶ 61} On February 23, 2007, Mullet, as appellee's president, sent a letter to appellants regarding the finish on the interior and exterior of the cabinets, which had begun to discolor due to the defective paint. The letter stated that Mullet had recognized the problem with the paint discoloration and had agreed to fix the cabinets. The letter further stated that if the work was not completed to the satisfaction of appellants or the cabinets were to discolor again, appellee would replace the cabinets with new kitchen and bathroom cabinets at no expense to appellants.

{¶ 62} Appellants argued that the letter was an admissible admission of fault by appellee. The trial court excluded the letter, finding that it was an offer to settle and was not admissible under Evid.R. 408.

{¶ 63} As stated above, the trial court's decision to admit or exclude evidence will not be disturbed absent an abuse of discretion. Upon review of the proffered Exhibit 6, we find the trial court did not abuse its discretion in excluding the exhibit. The letter was an offer of settlement, which in fact related to only the discoloration of the cabinets and not the composition of the cabinets, which was the subject of the present suit.

{¶ 64} Appellant's third assignment of error is overruled.

## Cross–Appeal I

{¶ 65} Appellee raises as a cross appeal the argument that the trial court erred in denying appellee's motion for directed verdict on appellants' claim of breach of contract.

{¶ 66} Based on our findings above, we find appellee's cross-appeal assignment of error to be moot.

{¶ 67} Accordingly, the judgment of the Stark County Court of Common Pleas is affirmed.

Judgment affirmed.

WISE, P.J., and EDWARDS, J., concur.