**WELLS FARGO BANK, N.A., et al., Appellees,**

v.

**SESSLEY et al., Appellants; Sand Canyon Corporation, Appellee.**

[Cite as *Wells Fargo Bank, N.A. v. Sessley*, 188 Ohio App.3d 213, 2010-Ohio-2902.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 09AP–178.

Decided June 24, 2010.

214

216

218

Thompson Hine L.L.P. and Scott A. Campbell, for appellees.

Philip Sessley and Leonadra Hutchins–Sessley, pro se.

CONNOR, Judge.

{¶ 1} Appearing pro se, defendants-appellants Philip Sessley and Leonadra Sessley appeal the decision of the Franklin County Court of Common Pleas granting summary judgment to plaintiff-appellee, Wells Fargo Bank, N.A., as Trustee for Option One Mortgage Loan Trust 2001–C, Asset–Backed Certificates, Series 2001–C ("Wells Fargo" or "appellees"), and "cross-complaint" defendant-appellee, Sand Canyon Corporation, f.k.a. Option One Mortgage Corporation ("Option One" or "appellees"). For the following reasons, we affirm the decision of the trial court.

{¶ 2} On May 15, 2001, Mr. Sessley obtained a mortgage loan from Option One in the amount of $85,500 to purchase real estate located at 963 North Nelson Road, Columbus, Ohio 43219. As a result, Mr. Sessley executed a note evidencing the debt and granted a mortgage securing the debt. These documents named Option One as the lender and mortgagee. The last payment that was made on the debt occurred in February 2006. Therefore, on February 7, 2007, Wells

Fargo filed a complaint in foreclosure, in which it alleged that it was the owner and holder of the promissory note and corresponding mortgage.

{¶ 3} Before appellants filed an answer or other responsive pleading, Wells Fargo filed an amended complaint on February 26, 2007. The mortgage documents attached to each of Wells Fargo's first two complaints named Option One as the lender and mortgagee. After appellants had filed an answer and counterclaim, Wells Fargo filed a motion for leave to file a second amended complaint, which the trial court granted. Accordingly, Wells Fargo filed its second amended complaint on April 24, 2007. Attached to the second amended complaint was the assignment of mortgage and note, which indicated that Option One had assigned the mortgage together with the note to Wells Fargo on February 28, 2007, three weeks after Wells Fargo had filed its initial complaint. The assignment was recorded on March 9, 2007. Appellants filed their answer and counterclaim to Wells Fargo's second amended complaint on May 29, 2007.

{¶ 4} On December 3, 2007, appellants sought leave to file a third amended answer and counterclaims. At this time, appellants also sought to join Option One as a "cross-complaint defendant." The trial court granted appellants' motion on March 11, 2008, and Option One filed its answer on June 30, 2008. Given the substantive allegations in appellants' "cross-complaint," we will hereinafter refer to the claims as third-party claims.

{¶ 5} On September 5, 2008, appellees filed a joint motion for summary judgment, which sought judgment in their favor on Wells Fargo's claims in addition to appellants' counterclaims and third-party claims. Appellants filed a memorandum contra, and appellees filed a reply. On October 28, 2008, the trial court granted appellees' motion.

{¶ 6} Thereafter, appellants filed various procedural motions, including two motions requesting an emergency stay of the foreclosure proceedings. During the pendency of this appeal, this court granted appellants' motion but conditioned such a stay upon the posting of a bond. After appellants failed to post a bond, the foreclosure proceedings continued forward.

{¶ 7} Appellants have appealed the trial court's judgment and raise 28 assignments of error. As best we can discern, appellants' 28 assignments of error present three general arguments. First, appellants argue that the trial court erred by granting summary judgment to appellees. Second, appellants argue that the trial court erred by denying their motion to add claims. Finally, appellants argue that the trial court erred by denying their motion for relief from judgment.

{¶ 8} With regard to the trial court's decision granting summary judgment, appellate review of summary-judgment decisions is de novo. *Helton v. Scioto*

*Cty. Bd. of Commrs.* (1997), 123 Ohio App.3d 158, 162, 703 N.E.2d 841. "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." *Mergenthal v. Star Banc Corp.* (1997), 122 Ohio App.3d 100, 103, 701 N.E.2d 383. We must affirm the trial court's judgment if any of the grounds raised by the movant at the trial court are found to support it, even if the trial court failed to consider those grounds. *Coventry Twp. v. Ecker* (1995), 101 Ohio App.3d 38, 41–42, 654 N.E.2d 1327.

■ {¶ 9} Summary judgment is proper only when the party moving for summary judgment demonstrates that (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in that party's favor. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.* (1997), 78 Ohio St.3d 181, 183, 677 N.E.2d 343. Additionally, a moving party cannot discharge its burden under Civ.R. 56 by simply making a conclusory allegation that the nonmoving party has no evidence to prove its case. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. Rather, the moving party must affirmatively demonstrate by affidavit or other evidence allowed by Civ.R. 56(C) that the nonmoving party has no evidence to support its claims. Id.

■ {¶ 10} In their challenges to the trial court's decision granting summary judgment, the preliminary issue is whether Wells Fargo was a real party in interest, such that it had standing to file and maintain this lawsuit. The relevant analysis hinges upon the application of Civ.R. 17(A), which provides:

> Every action shall be prosecuted in the name of the real party in interest. * * * No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest. Such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

Therefore, Civ.R. 17 permits a plaintiff to cure a real-party-in-interest problem by (1) showing that the real party in interest has ratified the commencement of the action or (2) joining or substituting the real party in interest. *Ohio Cent. RR. Sys. v. Mason Law Firm Co., L.P.A.,* 182 Ohio App.3d 814, 2009-Ohio-3238, 915 N.E.2d 397, ¶ 33, citing *Wells Fargo Bank, N.A. v. Byrd,* 178 Ohio App.3d 285, 2008-Ohio-4603, 897 N.E.2d 722. Further, like other procedural rules, "Civ.R. 17(A) 'shall be construed and applied to effect just results by eliminating delay,

unnecessary expense and all other impediments to the expeditious administration of justice.' " *Ohio Cent. RR. Sys.* at ¶ 33, quoting Civ.R. 1(B).

{¶ 11} In applying this rule to foreclosure actions, this court has provided:

A real party in interest is one who is directly benefited or injured by the outcome of the case. *Shealy v. Campbell* (1985), 20 Ohio St.3d 23, 24[, 20 OBR 210, 485 N.E.2d 701]. The purpose behind the real-party-in-interest require-ment is " 'to enable the defendant to avail himself of evidence and defenses that the defendant has against the real party in interest, and to assure him finality of the judgment, and that he will be protected against another suit brought by the real party [in] interest on the same matter.' " Id. at 24–25[, 20 O.B.R. 210, 485 N.E.2d 701], quoting *In re Highland Holiday Subdivision* (1971), 27 Ohio App.2d 237, 240[, 56 O.O.2d 404, 273 N.E.2d 903].

In foreclosure actions, the real party in interest is the current holder of the note and mortgage. *Chase Manhattan Mtge. Corp. v. Smith*, Hamilton App. No. C–061069, 2007-Ohio-5874[, 2007 WL 3225534], at ¶ 18.

*Everhome Mtge. Co. v. Rowland*, 10th Dist. No. 07AP–615, 2008-Ohio-1282, 2008 WL 747698, ¶ 11–12.

{¶ 12} If a party is not a real party in interest, it lacks standing to prosecute the action. *State ex rel. Jones v. Suster* (1998), 84 Ohio St.3d 70, 77, 701 N.E.2d 1002. If a party lacks standing to prosecute an action, then that party may not invoke the jurisdiction of a court. *State ex rel. Dallman v. Franklin Cty. Court of Common Pleas* (1973), 35 Ohio St.2d 176, 64 O.O.2d 103, 298 N.E.2d 515, syllabus.

{¶ 13} Appellate courts are often presented with real-party-in-interest issues in foreclosure actions. See *Rowland*; *Byrd*; see also *First Union Natl. Bank v. Hufford* (2001), 146 Ohio App.3d 673, 767 N.E.2d 1206; *Kramer v. Millott* (Sept. 23, 1994), 6th Dist. No. E–94–5, 1994 WL 518173; *Washington Mut. Bank, F.A. v. Green*, 156 Ohio App.3d 461, 2004-Ohio-1555, 806 N.E.2d 604; *Bank of New York v. Stuart*, 9th Dist. No. 06CA008953, 2007-Ohio-1483, 2007 WL 936706; *Washington Mut. Bank v. Novak*, 8th Dist. No. 88121, 2007-Ohio-996, 2007 WL 701081; *DLJ Mtge. Capital, Inc. v. Parsons*, 7th Dist. No. 07–MA–17, 2008-Ohio-1177, 2008 WL 697400; *Mid–State Trust IX v. Davis*, 2d Dist. No. 07–CA–31, 2008-Ohio-1985, 2008 WL 1838350; *Wells Fargo Bank, N.A. v. Jordan*, 8th Dist. No. 91675, 2009-Ohio-1092, 2009 WL 625560; *US Bank, Natl. Assn. v. Marcino*, 181 Ohio App.3d 328, 2009-Ohio-1178, 908 N.E.2d 1032; *Deutsche Bank Natl. Trust Co. v. Pagani*, 5th Dist. No. 09CA000013, 2009-Ohio-5665, 2009 WL 3440028; *Wells Fargo Bank, N.A. v. Stovall*, 8th Dist. No. 91802, 2010-Ohio-236, 2010 WL 320487. However, we find the circumstances presented in *Byrd* to be most similar to those presented herein.

{¶ 14} In *Byrd*, Wells Fargo Bank initiated a foreclosure action against the mortgagors based upon a note and mortgage that identified WMC Mortgage Corporation ("WMC") as the lender and mortgagee. *Byrd*, 178 Ohio App.3d 285, 2008-Ohio-4603, 897 N.E.2d 722, ¶ 2. Wells Fargo Bank then sought summary judgment and attached an assignment dated over one month after the complaint was filed. Id. at ¶ 3. The trial court denied summary judgment and dismissed the case with prejudice. Id. at ¶ 4. On appeal, the First Appellate District initially noted that WMC had neither been joined nor substituted in the trial court's proceedings. Id. at ¶ 12. As a result, the court indicated that the only argument Wells Fargo Bank could advance was for ratification under Civ.R. 17(A). In its analysis, the *Byrd* court provided:

> Ratification is a way that an agent can bind a principal. But ratification will not apply when the actor is not acting as the agent of the principal.
>
> In this case, Wells Fargo admitted to the trial court that it was not the real party in interest when the suit was filed. Wells Fargo filed suit on its own behalf and acquired the mortgage from WMC later. It was not acting as WMC's agent. There was no evidence that WMC had "ratified" the commencement of the action—only that it had sold the mortgage to Wells Fargo. None of the documents indicated that WMC even knew about this case. For ratification to occur, the ratifying party must know what actions it is ratifying. While Wells Fargo repeatedly argued that ratification had occurred, it seemed to be confused as to which party had to ratify. Below, it argued that "Plaintiff, being a real party in interest, did ratify the commencement of this action * * *." But Civ.R. 17 makes clear that it was WMC, not Wells Fargo, that had to ratify the commencement of the action.

(Footnotes omitted.) Id. at ¶ 12–13. Based upon these circumstances, the First Appellate District affirmed the decision overruling Wells Fargo's summary-judgment motion and dismissing the matter. Id. at ¶ 16. However, it modified the dismissal from one with prejudice to one without prejudice. Id. at ¶ 20.

{¶ 15} The similarities between *Byrd* and the instant matter are clearly evident. In the instant matter, Wells Fargo was not a real party in interest when it filed this foreclosure suit because it was not the mortgagee and holder of the note at that time. Rather, it obtained the assignment after filing this suit. Much like Wells Fargo did in *Byrd*, appellees herein argue that Wells Fargo ratified the commencement of this action when it filed the assignment. Again, however, this argument misses the mark. Ratification involves the process through which an agent can bind the principal. *Byrd*, 178 Ohio App.3d 285, 2008-Ohio-4603, 897 N.E.2d 722, ¶ 12, citing *Morr v. Crouch* (1969), 19 Ohio St.2d 24, 48 O.O.2d 43, 249 N.E.2d 780. When Wells Fargo filed its initial complaint, Option One was the holder and owner of the note and mortgage. Thus, it was the principal, while

Wells Fargo was the agent. See *Rowland*, 2008-Ohio-1282, 2008 WL 747698; see also *Byrd* at ¶ 13. Similar to the situation in *Byrd*, Wells Fargo filed the instant suit on its own behalf. It was not acting as Option One's agent. Based upon these circumstances, it was Option One and not Wells Fargo who had the authority to ratify. See *Byrd* at ¶ 13; see also Civ.R. 17(A) ("ratification * * * by * * * the real party in interest"). As a result, we reject appellees' argument that Wells Fargo ratified the commencement of this action by filing the assignment. Indeed, it could not have ratified its own commencement of this action.

{¶ 16} Nevertheless, one glaring distinction separates the instant matter from *Byrd*. Specifically, the *Byrd* court analyzed ratification because the real party in interest had neither been substituted nor joined in the foreclosure suit. In the instant matter, however, Option One has been involved in this suit since June 2008. Thus, the underlying concern about multiple judgments on the same debt is absent from this matter. Because Option One was joined in this matter, we find that the real-party-in-interest problem was cured. See Civ.R. 17(A); but see *Byrd* at ¶ 16; *Jordan*, 2009-Ohio-1092, 2009 WL 625560, at ¶ 23–26; *Northland Ins. Co. v. Illum. Co.*, 11th Dist. No. 2002–A–0058, 2004-Ohio-1529, 2004 WL 612889, at ¶ 17; *Travelers Indemn. Co. v. R.L. Smith Co.* (Apr. 13, 2001), 11th Dist. No. 2000–L–014, 2001 WL 369677.

{¶ 17} We believe this analysis follows the principles set forth in Civ.R. 17(A) and 1(B). We therefore respectfully disagree with the other ways that courts have decided similar issues. See *Bank of New York v. Stuart*, 9th Dist No. 06CA008953, 2007-Ohio-1483, 2007 WL 936706, citing *Campus Sweater and Sportswear Co. v. M.B. Kahn Constr. Co.* (D.C.S.C., 1979), 515 F.Supp. 64, 84–85, and *Dubuque Stone Prods. Co. v. Fred L. Gray Co.* (C.A.8, 1966), 356 F.2d 718, 723–724 ("filing the assignment with the trial court before judgment was entered was sufficient to alert the court and appellants that appellee was the real party in interest"); see also *Byrd* at ¶ 16, *Jordan* at ¶ 23–26; *Northland Ins. Co.* at ¶ 17 (generally holding that the real-party-in-interest problem is incapable of being cured after the commencement of the action). We believe *Stuart* provides a blanket rule that glosses over the underlying concerns associated with real-party-in-interest problems, while *Byrd, Jordan, Northland Ins. Co.*, and *Travelers Indemn. Co.* overlook the clear indication that such problems are capable of being cured through ratification, joinder, or substitution. See Civ.R. 17 ("Such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest"); see also *State ex rel. Jones v. Suster* (1998), 84 Ohio St.3d 70, 77, 701 N.E.2d 1002 ("lack of standing may be cured by substituting the proper party so that a court otherwise having subject matter jurisdiction may proceed to adjudicate the matter"). Because the real-party-in-interest problem was cured when Option One became a party to this

litigation, we reject appellants' argument that the trial court erred by granting judgment to appellees based upon the real-party-in-interest issue.

{¶ 18} Appellants next argue that the trial court improperly granted summary judgment without affording appellants the opportunity to conduct discovery. Even though appellants filed a motion to compel discovery in July 2008, which the trial court never decided, appellants failed to file a motion in accordance with Civ.R. 56(F), which provides:

> Should it appear from the affidavits of a party opposing the motion for summary judgment that the party cannot for sufficient reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just.

Given that appellants failed to file a Civ.R. 56(F) motion with supporting affidavits, the trial court apparently determined that its ruling on appellees' summary-judgment motion was not premature. See *Scott v. Hertz Corp.*, 10th Dist. No. 05AP–1180, 2006-Ohio-4982, 2006 WL 2734051, ¶ 12. Because appellants failed to request a delay in the trial court's resolution of appellees' summary-judgment motion, we find that the trial court did not err as to this issue. Id. at ¶ 13.

{¶ 19} In regard to the trial court's decision granting appellees summary judgment, appellants argue that this was error because genuine issues of material fact exist. We must determine, therefore, whether summary judgment was properly granted.

{¶ 20} It is well settled that a mortgagee is entitled to judgment after there has been a default on the conditions of the mortgage and the debt as evidenced by the note having been accelerated. *Bank One, N.A. v. Swartz*, 9th Dist. No. 03CA008308, 2004-Ohio-1986, 2004 WL 840118, ¶ 18, quoting *Metro. Sav. Bank v. Papadelis* (Sept. 13, 1995), 9th Dist. No. 2380–M, 1995 WL 542214. In the instant matter, appellees attached an affidavit to their motion for summary judgment, in which the affiant averred based upon his personal knowledge that he was familiar with the records relating to appellants' loan, appellants had not made a payment on the note since February 2006, the note had been accelerated, and as of September 3, 2008, the outstanding principal balance due was $82,391.05, with a negative escrow balance of $7,507.41.

{¶ 21} In appellants' response, rather than presenting their own evidence demonstrating that genuine issues of material fact exist, appellants presented two general positions. First, they challenge Wells Fargo's standing based upon the real-party issue, which we have already considered and decided. Second, appel-

lants challenge the evidentiary support for appellees' motion. The Ninth Appellate District considered nearly identical arguments in *Swartz*, 2004-Ohio-1986, 2004 WL 840118. Specifically, *Swartz* provided:

> The affidavit attached to [the mortgagee's] motion for summary judgment stated that the affiant was a foreclosure specialist of [the mortgagee], that the loan file was under her immediate control and supervision, that the note and mortgage attached to the complaint are accurate copies of the original instruments, that the account was and remains in default and therefore, [the mortgagee] has exercised the option to accelerate the loan, and that the outstanding balance was $38,826.59 plus interest. This is an averment made upon personal knowledge of the affiant and it references the documents filed with the complaint. Therefore, the affidavit is sufficient to satisfy Civ.R. 56(E). Appellants have not presented evidence that the amount owed is incorrect; therefore, the affidavit is sufficient to demonstrate the outstanding debt. Furthermore, Appellants' assertions that the affidavits violate the hearsay rules of evidence are without merit. The statements in the affidavit refer to business records which are not hearsay; they are records kept in the course of regularly conducted business activity, it was the regular practice of that business activity to make the records, and the affiant stated they were in her immediate control and supervision and thereby she is a person with knowledge regarding the records. See Evid.R. 803(6).

Id. at ¶ 16. Again, appellants present the same arguments that were presented and rejected in *Swartz*. In response, we follow the well-reasoned analysis set forth by the Ninth Appellate District. Accordingly, we find that appellees provided Civ.R. 56(E) evidence supporting the position that they were entitled to judgment, while appellants failed to meet their reciprocal burden. As a result, we find no error in the trial court's decision granting summary judgment to Wells Fargo on its complaint in foreclosure.

{¶ 22} Appellants next argue that the judgment rendered by the trial court failed to resolve their counterclaims and third-party claims. After reviewing the judgment rendered by the trial court herein, it is true that there was no substantive analysis of any of appellants' claims. Instead, the trial court merely provided: "The counterclaims and cross-claims of the Sessleys against the Trustee and Option One are dismissed with prejudice." However, despite appellants' contention to the contrary, this did resolve appellants' claims. Indeed, the trial court granted summary judgment in favor of appellee and dismissed appellants' claims. We must next consider whether such a decision was proper.

{¶ 23} Many of appellants' claims allege violations of Ohio and federal statutory law. Specifically, appellants assert that appellees violated the following: (1) the

Truth in Lending Act ("TILA") as codified at 15 U.S.C. 1601 and implemented by 12 C.F.R. 226, (2) the Home Ownership Equity Protection Act ("HOEPA") as codified at 15 U.S.C. 1639, (3) the Real Estate Settlement Procedures Act ("RESPA") as codified at 12 U.S.C. 2601, (4) Section 5(a) of the Federal Trade Commission Act ("FTCA") as codified at 15 U.S.C. 45(a), (5) the Fair Debt Collection Practices Act ("FDCPA") as codified at 15 U.S.C. 1692, and (6) the Ohio Consumer Sales Practices Act ("CSPA") as codified at O.R.C. Chapter 1345. These statutory claims all fail based either upon the expiration of the statutes of limitations or upon the substantive merits of the claims.

{¶ 24} Appellants' claims under TILA, HOEPA, and RESPA are all barred by the statutes of limitations applying to such actions. Depending upon the allegation and remedy sought, the statutes of limitations governing such claims are either one year or three years. See *Steel Valley Bank, N.A. v. Tuckosh*, 7th Dist. No. 04 HA 566, 2004-Ohio-4907, 2004 WL 2070810, ¶ 31; see also 15 U.S.C. 1640(e); see also 12 U.S.C. 2614. Based upon appellants' allegations, appellees violated these statutes during or before the May 15, 2001 closing. As a result, the latest appellants could have raised these claims would have been on May 15, 2004. Because appellants raised their claims on March 18, 2008, the statutes of limitations had long since expired. Appellants' general references to equitable tolling without any explanation as to how it applies to the instant matter are insufficient to create genuine issues of material fact. Indeed, appellants signed the mortgage documents at the closing and fail to explain why they were apparently unaware of the alleged violations at that time. As a result, appellants have failed to present any genuine issues of material fact with regard to their TILA, HOEPA, and RESPA claims. Accordingly, the trial court did not err in granting summary judgment and dismissing these claims.

{¶ 25} As for appellants' FTCA claims, they fail on the merits because a private right of action does not exist under section 5 of the FTCA. *Morales v. Walker Motors Sales, Inc.* (S.D.Ohio, 2000), 162 F.Supp.2d 786, 790, citing *Am. Airlines v. Christensen* (C.A.10, 1992), 967 F.2d 410; *Fulton v. Hecht* (C.A.5, 1978), 580 F.2d 1243, certiorari denied, 440 U.S. 981, 99 S.Ct. 1789, 60 L.Ed.2d 241; *Alfred Dunhill, Ltd. v. Interstate Cigar Co.* (C.A.2, 1974), 499 F.2d 232; *Holloway v. Bristol–Myers Corp.*, 158 U.S.App.D.C. 207, 485 F.2d 986; *Carlson v. Coca–Cola Co.* (C.A.9, 1973), 483 F.2d 279; *St. Martin v. KFC Corp.* (W.D.Ky., 1996), 935 F.Supp. 898; *Child World, Inc. v. S. Towne Centre, Inc.* (S.D.Ohio, 1986), 634 F.Supp. 1121. Indeed, the decision as to whether actions amount to unfair or deceptive practices under FTCA must be left to the Federal Trade Commission, rather than the courts. Id., citing *Holloway.* Accordingly, the trial court did not err in granting summary judgment and dismissing appellants' FTCA claims.

{¶ 26} Appellants' FDCPA claims fail on the merits because the FDCPA applies only to third-party debt collectors, rather than creditors or bona fide assignees. *Bank of New York v. Barclay*, 10th Dist. No. 03AP–844, 2004-Ohio-1217, 2004 WL 503935, ¶ 20, citing *Huntington Natl. Bank v. Metzenbaum* (Nov. 12, 1998), 8th Dist. No. 73723, 1998 WL 787403, quoting *Meads v. Citicorp Credit Servs., Inc.* (S.D.Ga.,1988), 686 F.Supp. 330, 333. Indeed, the FDCPA "is quite clear that it is directed at independent debt collectors and not creditors attempting to collect their own debts." Id., citing *Beck v. Alliance Funding Co.* (D.Conn., 2000), 113 F.Supp.2d 274, 275. Because appellees acted as a creditor and an assignee when they attempted to collect the debt, the trial court did not err in granting summary judgment and dismissing appellants' FDCPA claims.

{¶ 27} Regarding appellants' CSPA claims, appellees argue that the statute of limitations bars such claims based upon the date of the closing. However, case law clearly provides that the statute of limitations begins to run on the date of the violation, which may or may not coincide with the date of the underlying transaction. *Varavvas v. Mullet Cabinets, Inc.*, 185 Ohio App.3d 321, 2009-Ohio-6962, 923 N.E.2d 1221, ¶ 31, citing *Montoney v. Lincoln Logs, Ltd.*, 10th Dist. No. 06AP–284, 2007-Ohio-236, 2007 WL 155451, ¶ 26; see also *Luft v. Perry Cty. Lumber & Supply Co.*, 10th Dist. No. 02AP–559, 2003-Ohio-2305, 2003 WL 21027291, ¶ 27. Indeed, this court has held that the "General Assembly explicitly recognized that a CSPA violation may occur before, during or after the underlying consumer transaction." *Montoney* at ¶ 26. Further, there is a two-year statute of limitations governing such CSPA damages claims. Id.

{¶ 28} In appellants' pleading, they allege CSPA violations that occurred during the closing in addition to violations that occurred thereafter. With regard to the alleged violations that occurred during the closing, the statute of limitations bars such claims. Again, appellants have failed to demonstrate factual issues in this regard. However, to the extent that appellants' CSPA claims present allegations of improper servicing and unlawful fees occurring from November 2006 through February 2007, we find that the statute of limitations does not bar these CSPA claims. Accordingly, the statute of limitations could not have formed the proper basis for the decision granting summary judgment. Inasmuch as appellees argue that appellants' CSPA claims are all barred by the statute of limitations, we find this argument to be unpersuasive. As a result, we must consider the substance of appellants' CSPA claims.

{¶ 29} In their motion for summary judgment, appellees argued that appellants had no evidence supporting the allegations of improper servicing or unlawful fees. In support, appellees referred to the deposition testimony of appellants wherein they testified that they did not know what fees were improperly charged to or paid by them. Accordingly, appellees provided Civ.R. 56(C)

evidence demonstrating that appellants had no evidence supporting their CSPA claims. See *Dresher*, 75 Ohio St.3d at 293, 662 N.E.2d 264. As a result, the burden then shifted to appellants to demonstrate genuine issues of material fact on these issues.

{¶ 30} In these circumstances, appellants were required to do more than merely rely on the arguments presented in their pleading. See Civ.R. 56(E). In response to appellees' motion for summary judgment, appellants presented the same legal arguments contained in their pleading. Specifically, they generally argued that appellees' practices were not authorized under the terms of the loan, the fees imposed were the result of Option One's failure to post appellants' payments in a timely manner, and Option One incorrectly computed the fees. Appellants presented these general arguments in an attachment that they called a "declaration." Appellees filed a motion to strike this declaration, which was never ruled upon by the trial court. Aside from the issue of whether appellants' declaration met the standard for an affidavit established in Civ.R. 56(E), we note that appellants' declaration is insufficient to withstand appellees' summary-judgment motion. Indeed, it is well settled that a party may not simply use a self-serving affidavit to establish a genuine issue of material fact if such an affidavit contains nothing more than bare contradictions of other competent evidence and a conclusory statement of law. *Church v. Fleishour Homes, Inc.*, 172 Ohio App.3d 205, 2007-Ohio-1806, 874 N.E.2d 795, ¶ 34, citing *Bhatia v. Johnston* (C.A.5, 1987), 818 F.2d 418, 421–422; see also *Am. Heritage Life Ins. Co. v. Orr* (C.A.5, 2002), 294 F.3d 702, 710 (self-serving affidavits unsupported and without corroborating evidentiary materials are insufficient to create a genuine issue of material fact on summary judgment). This is precisely what appellants attempted to do in their declaration. As a result, we find that appellants failed to meet their reciprocal burden under Civ.R. 56 with regard to their CSPA claims. Accordingly, we find that the trial court did not err in granting summary judgment and dismissing appellants' CSPA claims.

{¶ 31} Having considered all of appellants' statutory claims, we must now turn to appellants' claims for conversion, breach of contract, breach of fiduciary duties, fraud, and conspiracy.

{¶ 32} Appellants' conversion and contract claims are premised upon allegations regarding duplicate insurance coverage, excessive and improper fees, and the act of filing this suit in foreclosure. The elements of conversion and breach-of-contract claims are well settled. A conversion is "the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights." *Joyce v. Gen. Motors Corp.* (1990), 49 Ohio St.3d 93, 96, 551 N.E.2d 172. As to appellants' breach-of-contract claims, such claims require "the existence of a

contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." *Wildi v. Hondros College*, 10th Dist. No. 09AP–346, 2009-Ohio-5205, 2009 WL 3155136, ¶ 13, citing *Jarupan v. Hanna*, 173 Ohio App.3d 284, 2007-Ohio-5081, 878 N.E.2d 66, ¶ 18.

{¶ 33} In their motion for summary judgment, appellees again referred to appellants' depositions in support of the position that appellants had no evidence supporting the allegations of excessive or improper fees, in addition to allegations of overcharges for taxes and duplicate insurance. Indeed, appellants admitted that they had no knowledge about what the charges for insurance coverage should have been, nor did they know whether the insurance coverage they did have caused any damages. As such, again, appellees provided Civ.R. 56(C) evidence supporting their motion. In response, appellants failed to demonstrate genuine issues of material fact and instead simply provided a self-serving, conclusory declaration. We accordingly find that the trial court did not err in granting summary judgment on appellants' claims for conversion and breach of contract based upon these allegations.

{¶ 34} With regard to the allegations pertaining to the act of filing this foreclosure suit, we start by noting the well-settled principles regarding mortgages:

> The law recognizes two kinds of ownership, equitable and legal.
>
> An "equitable owner" is one who is recognized in equity as the owner of the property, because the real and beneficial use and title belong to him, although the bare legal title is invested in another.
>
> A "legal owner" is one in whom the legal title to real estate is vested, but subject to the rights of any equitable owner.

*Levin v. Carney* (1954), 161 Ohio St. 513, 518, 53 O.O. 390, 120 N.E.2d 92. A mortgagor in possession maintains both legal and equitable ownership over the property. Id. at 520, 53 O.O. 390, 120 N.E.2d 92. However, after a condition of the mortgage is broken, "the legal title as between the mortgagee and mortgagor is vested in the mortgagee, subject to the equity of redemption." Id. Therefore, after a condition is broken, the mortgagee may sue for the foreclosure of its mortgage and sale of the mortgaged property. Id. at paragraph three of the syllabus.

{¶ 35} Applying these rules to the instant matter, we first note that it is undisputed that a condition of the mortgage has been broken. Indeed, appellants have defaulted on their obligation to repay the note. As a result, appellees properly initiated this action in foreclosure. Therefore, the act of filing this foreclosure suit was neither a conversion nor a breach of contract. Instead, it was one potential legal remedy available to appellees based upon appellants'

undisputed failure to meet their obligation to repay the note. Accordingly, the trial court did not err in dismissing appellants' conversion and breach-of-contract claims in this regard.

{¶ 36} Appellants' breach-of-fiduciary-duty claim is based upon the documents and disclosures involved in the closing. The elements for such a claim include " ' "(1) the existence of a duty arising from a fiduciary relationship; (2) a failure to observe the duty; and (3) an injury resulting proximately therefrom." ' " *Camp St. Mary's Assn. of W. Ohio Conference of United Methodist Church, Inc. v. Otterbein Homes*, 176 Ohio App.3d 54, 2008-Ohio-1490, 889 N.E.2d 1066, ¶ 19, quoting *Thomas v. Fletcher*, 3d Dist. No. 17–05–31, 2006-Ohio-6685, 2006 WL 3702699, ¶ 13, quoting *Werthmann v. DONet*, 2d Dist. No. 20814, 2005-Ohio-3185, 2005 WL 1490372, ¶ 42. When there is no fiduciary relationship between the parties, a breach-of-fiduciary-duty claim necessarily fails. *Waffen v. Summers*, 6th Dist. No. OT–08–034, 2009-Ohio-2940, 2009 WL 1741731, ¶ 41. Generally, the relationship between a creditor and a debtor is not a fiduciary relationship but instead is governed by the principles of contract. *Stone v. Davis* (1981), 66 Ohio St.2d 74, 78, 20 O.O.3d 64, 419 N.E.2d 1094.

{¶ 37} In the instant matter, appellants have not alleged any special relationship with appellees other than the creditor-debtor relationship. Accordingly, we find no genuine issues of material fact with regard to this claim. The trial court therefore did not err in granting summary judgment as to appellants' breach-of-fiduciary-duty claim.

{¶ 38} Appellants' fraud claim is based upon two alleged misrepresentations. First, appellants raise issue with the differences between the terms of the loan discussed before the closing versus the terms of the loan actually presented during the closing. Second, appellants allege that they proceeded with the closing only because their mortgage broker indicated that they would be able to refinance their mortgage at more favorable rates.

{¶ 39} To prevail on a fraud claim, a party must demonstrate:

(a) [A] representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.

*Otterbein Homes*, 176 Ohio App.3d 54, 2008-Ohio-1490, 889 N.E.2d 1066, at ¶ 14, citing *State ex rel. Illum. Co. v. Cuyahoga Cty. Court of Common Pleas*, 97 Ohio

St.3d 69, 2002-Ohio-5312, 776 N.E.2d 92, ¶ 24, quoting *Russ v. TRW, Inc.* (1991), 59 Ohio St.3d 42, 49, 570 N.E.2d 1076.

{¶ 40} According to the record, appellants were fully aware that the closing documents included terms that differed from those that were discussed before the closing. Indeed, appellants interrupted the closing to question their mortgage broker for at least 30 minutes regarding these differences. Therefore, appellants acknowledged the differences in the loan documents before they signed them. As a result, appellants cannot now argue that they justifiably relied upon representations provided before the closing. As a result, the differences between the terms of the loans cannot serve as the basis for appellants' fraud claim. The trial court did not err in granting summary judgment in this regard.

{¶ 41} With regard to the mortgage broker's representation that appellants would be able to refinance their mortgage within two years, we note that fraud claims are generally not predicated on "a representation concerning a future event, as such representation is more in the nature of a promise or contract or constitutes mere predictions or opinions about what the future may bring." *Isaac v. Alabanza Corp.,* 7th Dist. No. 05 JE 55, 2007-Ohio-1396, 2007 WL 901596, ¶ 44, quoting *Yo–Can, Inc. v. Yogurt Exchange, Inc.,* 149 Ohio App.3d 513, 2002-Ohio-5194, 778 N.E.2d 80, ¶ 43. As this general rule relates to the instant matter, it is difficult to imagine how the mortgage broker's supposition regarding appellants' future ability to refinance could amount to anything besides a prediction or opinion. Indeed, appellants' future ability to refinance necessarily depended upon a number of uncontrollable, outside factors. As a result, we find that the mortgage broker's opinion about appellants' ability to refinance cannot serve as the basis for appellants' fraud claim against appellees. The trial court did not err in granting summary judgment in this regard.

{¶ 42} With regard to appellants' conspiracy claim, such a claim must be premised upon an underlying wrongful act. See *Williams v. Aetna Fin. Co.* (1998), 83 Ohio St.3d 464, 475, 700 N.E.2d 859. Because we have upheld the trial court's granting of summary judgment on each of appellants' claims, appellants' conspiracy claim also fails. The trial court did not err in granting summary judgment on this claim.

{¶ 43} Thus, we have found unpersuasive each assignment of error pertaining to the trial court's decision to grant appellees' summary judgment and dismiss appellants' counterclaims and third-party claims. Accordingly, we overrule assignments of error three through five, seven through 17, and 19 through 28.

{¶ 44} In assignment of error six, appellants argue that the trial court erred by denying their motion to add claims. Civ.R. 15 governs such motions and is reviewed on an abuse-of-discretion standard. Appellants fail to cite any legal

authority or present a legal argument supporting this assignment of error. Because appellants have failed to demonstrate an abuse of discretion, we overrule assignment of error six.

{¶ 45} In assignments of error one, two, and 18, appellants argue that the trial court abused its discretion and erred by denying their postjudgment motions. However, the trial court never rendered a decision on these motions. We therefore have no decision to review. See *Tuckosh v. Cummings*, 7th Dist. No. 09 HA 4, 2009-Ohio-6401, 2009 WL 4548887, ¶ 34. Because these assignments of error are premature, we dismiss assignments of error one, two, and 18.

{¶ 46} Based upon the foregoing, we overrule assignments of error three through 17 and 19 through 28. Additionally, we dismiss assignments of error one, two, and 18. We accordingly affirm the judgment of the trial court.

Judgment affirmed.

TYACK, P.J., and MCGRATH, J., concur.