[Cite as *Belvino L.L.C. v. Empson (USA) Inc.*, 2012-Ohio-3074.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 97305**

---

## BELVINO LLC

PLAINTIFF-APPELLANT

vs.

## EMPSON (USA) INC., ET AL.

DEFENDANTS-APPELLEES

---

**JUDGMENT:**
**AFFIRMED IN PART; REVERSED IN PART**
**AND REMANDED**

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-730562

**BEFORE:** Kilbane, J., Stewart, P.J., and Keough, J.

**RELEASED AND JOURNALIZED:** July 5, 2012

**ATTORNEYS FOR APPELLANT**

Marc J. Kessler
Kerry R. Green
Hahn Loeser & Parks LLP
65 East State Street
Suite 1400
Columbus, Ohio 43215

**ATTORNEYS FOR APPELLEES**

Hansel H. Rhee
Steven D. Forry
Ice Miller LLP
250 West Street
Columbus, Ohio 43215

Jay E. Krasovec
H. Alan Rothenbuecher
Ice Miller, LLP
600 Superior Avenue, East
Suite 1701
Cleveland, Ohio 44115

MARY EILEEN KILBANE, J.:

**{¶1}** Plaintiff-appellant, BelVino LLC ("BelVino"), appeals from the trial court's judgments granting summary judgment in favor of defendants-appellees, il Molino de Grace ("il Molino") and Empson (USA) Inc. ("Empson"), and denying its motion for relief from judgment under Civ.R. 60(B). Finding merit to the appeal, we affirm in part, reverse in part and remand.

**{¶2}** The instant appeal arises from a lawsuit filed by BelVino against il Molino and Empson, alleging that they wrongfully terminated BelVino's franchise agreement with il Molino in violation of Ohio's Alcoholic Beverages Franchise Act ("OABFA"), R.C. 1333.82, et seq. In May 2006, BelVino became the exclusive importer and distributor of il Molino's wines in Ohio. il Molino operates a vineyard in Italy. In September 2008, BelVino partnered with Euro USA, LLC, and formed a new joint venture known as Euro USA/BelVino. Euro USA/BelVino then became the exclusive distributor of il Molino's wines and BelVino became the exclusive importer.

**{¶3}** In the fall of 2009, il Molino and Empson, a national importing company, began discussions regarding Empson becoming il Molino's sole importer in the United States. il Molino eventually retained Empson as its new exclusive importer in February 2010. In March 2010, il Molino advised BelVino that it was terminating its importer relationship with BelVino and replacing BelVino with Empson. il Molino explained that

the switch to Empson was necessary to ensure il Molino's financial objectives were met. Separately, in April 2010, Empson terminated Euro USA/BelVino's distribution franchise with il Molino, stating that it intended to reassign distribution rights for il Molino in Ohio.

{¶4} As a result, BelVino filed a complaint against il Molino and Empson in June 2010, alleging three causes of action. In Count I, BelVino alleges that il Molino breached its contract with BelVino by terminating the franchise agreement under the OABFA, without just cause. In Count II, BelVino alleges that Empson intentionally interfered with il Molino's contractual agreement with BelVino by convincing il Molino to unilaterally terminate its agreement with BelVino. In Count III, BelVino alleges that Empson interfered with its business relationships by inducing il Molino to discontinue its relationship with BelVino.

{¶5} On August 5, 2010, BelVino entered into an agreement with Euro USA/BelVino, where Euro USA/BelVino assigned to BelVino its right to distribute il Molino wines and its litigation rights. BelVino then amended its complaint on August 11, 2010. In the amended complaint, BelVino reasserted its original causes of actions and added a claim for declaratory judgment, asking the trial court to declare that il Molino and Empson cannot unilaterally terminate BelVino's franchise agreement under the OABFA.

{¶6} In response, il Molino and Empson each filed an answer and identical counterclaims against BelVino. They sought a declaration that: (1) BelVino was not

the distributor of il Molino wines in Ohio and was not entitled to any protection under the OABFA; (2) Empson is a "successor manufacturer" under the OABFA; and (3) il Molino does not "control" Empson as provided for in the OABFA.

{¶7} BelVino filed a partial motion for summary judgment and il Molino and Empson each filed cross motions for summary judgment, asking the trial court to issue judgment as a matter of law. On August 16, 2011, the trial court denied BelVino's partial motion for summary judgment and granted il Molino's and Empson's motions for summary judgment.

{¶8} The trial court issued an opinion with its order. In its opinion, the trial court first addressed the issue of standing raised by il Molino and Empson. il Molino and Empson argued that Euro USA/BelVino's assignment did not give BelVino standing to sue on Euro USA/BelVino's behalf. The trial court found that Euro USA/BelVino's assignment to BelVino gave BelVino the requisite standing to sue on behalf of Euro USA/BelVino. The court then noted that the OABFA protects contractual relationships between a manufacturer and distributor. Euro USA/BelVino was il Molino's distributor when Empson terminated Euro USA/BelVino's franchise agreement. At that time, the relationship that existed between il Molino and BelVino was a manufacturer-importer relationship. Therefore, the court concluded that the OABFA did not apply to BelVino. Even if BelVino was considered a manufacturer, the trial court concluded that the OABFA did not protect the relationship between two manufacturers.

{¶9} As between Euro USA/BelVino and Empson, the trial court found that the

OABFA did not apply "because they had no relationship, contractual or otherwise." The court noted that the OABFA does not contemplate a relationship between a wholly unrelated importer (Empson) and distributor (Euro USA/BelVino).

{¶10} The trial court then found that the tortious interference with contract and interference with business relationship claims failed. The tortious interference with contract failed "because there was no franchise between il Molino and BelVino[.] Therefore, Empson could not have interfered with a contract as a matter of law." Likewise, the trial court found that the intentional interference with BelVino's business relationship claim failed because the relationship involved two importers, Empson and Euro USA/BelVino and there was no evidence suggesting that Empson used improper means to become il Molino's national importer.

{¶11} On August 22, 2011, BelVino moved for relief from judgment under Civ.R. 60(B), which the trial court denied.

{¶12} It is from these orders that BelVino appeals, raising the following two assignments of error for review.

ASSIGNMENT OF ERROR ONE

The trial court erred in granting summary judgment in favor of [il Molino and Empson].

ASSIGNMENT OF ERROR TWO

The trial court erred in refusing to grant [BelVino] relief from judgment under [Civ.R. 60(B)].

Standard of Review

**{¶13}** We review an appeal from summary judgment under a de novo standard of review. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 1996-Ohio-336, 671 N.E.2d 241; *Zemcik v. LaPine Truck Sales & Equip. Co.*, 124 Ohio App.3d 581, 585, 706 N.E.2d 860 (1998). In *Zivich v. Mentor Soccer Club*, 82 Ohio St.3d 367, 369-370, 1998-Ohio-389, 696 N.E.2d 201, the Ohio Supreme Court set forth the appropriate test as follows:

> Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 653 N.E.2d 1196, paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264, 273-274.

**{¶14}** Once the moving party satisfies its burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E); *Mootispaw v. Eckstein*, 76 Ohio St.3d 383, 385, 1996-Ohio-389, 667 N.E.2d 1197. Doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359, 1992-Ohio-95, 604 N.E.2d 138.

Standing

**{¶15}** Before we address the OABFA, we first discuss il Molino and Empson's argument that BelVino was not the real party in interest and lacked standing to assert any

claims on Euro USA/BelVino's behalf.

**{¶16}** The issue of standing "is a threshold question for the court to decide in order for it to proceed to adjudicate the action." *State ex rel. Jones v. Suster*, 84 Ohio St.3d 70, 77, 1998-Ohio-275, 701 N.E.2d 1002. "Lack of standing challenges the capacity of a party to bring an action, not the subject matter jurisdiction of the court." *Id*., citing *State ex rel. Smith v. Smith*, 75 Ohio St.3d 418, 420, 1996-Ohio-215, 662 N.E.2d 366. To decide whether the requirement has been satisfied that an action be brought by the real party in interest, "courts must look to the substantive law creating the right being sued upon to see if the action has been instituted by the party possessing the substantive right to relief." *Shealy v. Campbell*, 20 Ohio St.3d 23, 25, 485 N.E.2d 701 (1985).

**{¶17}** Civ.R. 17(A) governs "real party in interest" and provides in pertinent part:

> Every action shall be prosecuted in the name of the real party in interest. * * * No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest. Such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

**{¶18}** Like other procedural rules, "Civ.R. 17(A) 'shall be construed and applied to effect just results by eliminating delay, unnecessary expense and all other impediments to the expeditious administration of justice.'" *Ohio Cent. RR. Sys. v. Mason Law Firm Co., L.P.A.*, 182 Ohio App.3d 814, 2009-Ohio-3238, 915 N.E.2d 397, ¶ 33 (10th Dist.), quoting Civ.R. 1(B).

**{¶19}** il Molino and Empson argue that while Euro USA/BelVino may have

assigned its rights to BelVino, this assignment did not occur until after BelVino's initial complaint was filed and when BelVino amended its complaint, it failed to assert any claims on behalf of Euro USA/BelVino. In support of their argument, il Molino and Empson rely primarily on *Wells Fargo Bank, N.A. v. Jordan*, 8th Dist. No. 91675, 2009-Ohio-1092. *Jordan*, however, is factually distinguishable from the matter before us. *Jordan* involves a foreclosure action and stands for the proposition that the putative mortgagee, who obtains the mortgage through an assignment or succession, must own the mortgage at the time of the filing of the complaint, otherwise the putative mortgagee lacks standing.

{¶20} Whereas, the instant case involves a business relationship among BelVino, Euro USA/BelVino, and il Molino that spanned over four years. BelVino partnered with Euro USA, LLC and formed Euro USA/BelVino to increase its geographical reach. BelVino worked with Euro USA/BelVino to jointly distribute the il Molino brand in Ohio. All of il Molino's inventory was shipped to BelVino and il Molino representatives always met with BelVino, even after the joint venture was formed. In August 2005, BelVino entered into an agreement with Euro USA/BelVino, where Euro USA/BelVino assigned to BelVino its right to distribute il Molino wines and its litigation rights. The trial court found, and we agree, that this assignment gave BelVino the requisite standing to sue on Euro USA/BelVino's behalf.

{¶21} Having found that BelVino is a real party in interest and has the requisite standing, we next address whether the trial court erred when it granted summary judgment

in favor of il Molino and Empson.

<u>The OABFA</u>

**{¶22}** The OABFA governs the franchise relationships between manufacturers and distributors of alcoholic beverages in Ohio. R.C. 1333.82, et seq. "The OABFA affords Ohio beer and wine distributors unique protections. It has been held the purpose of the OABFA is 'to remedy the lack of equal bargaining power between Ohio's alcoholic beverages wholesalers and out-of-state beverage manufacturers.'" *Esber Beverage Co. v. Wine Group, Inc.*, 5th Dist. No. 2011CA00179, 2012-Ohio-1215, ¶ 12 (*"Esber Beverage"*), quoting *Esber Beverage Co. v. LaBatt USA Operating Co.*, Stark C.P. No. 2009CV03142 (Dec. 1, 2009). *See also Beverage Distrib., Inc. v. Miller Brewing Co.*, 803 F.Supp.2d 765 (S.D.Ohio 2011); *Hill Distrib. Co. v. St. Killian Importing Co., Inc.*, S.D. Ohio No. 2:11-CV-706, 2011 WL 3957255 (Sept. 7, 2011).

**{¶23}** In furtherance of this goal, the OABFA requires every manufacturer of alcoholic beverages to contract with or offer in good faith to their distributors a written franchise specifying the rights and duties of both parties. R.C. 1333.83. Additionally,

> [w]hen a distributor of beer or wine for a manufacturer, or the successors or assigns of the manufacturer, distributes the beer or wine for ninety days or more without a written contract, a franchise relationship is established between the parties, and sections [R.C.] 1333.82 to 1333.87 apply to the manufacturer, its successor or assigns, and the distributor.

*Id.*

The OABFA defines "manufacturer" as "a person, whether located in this state or elsewhere, that manufactures or supplies alcoholic beverages to distributors in this state."

R.C. 1333.82(B). "Distributor" is defined as "a person that sells or distributes alcoholic beverages to retail permit holders in this state, but does not include the state or any of its political subdivisions." *Id.* at (C).

{¶24} The OABFA also states that a franchise relationship cannot be terminated absent prior consent unless "just cause" exists and notice is provided. R.C. 1333.85. R.C. 1333.85(A) lists three situations that always constitute just cause: (1) voluntary bankruptcy; (2) involuntary bankruptcy; or (3) loss of liquor permits. R.C. 1333.85(B) lists four situations that never constitute just cause: (1) failure of a party to take action that would result in a violation of federal or state law; (2) restructuring, other than in bankruptcy, of a manufacturer's business; (3) unilateral alteration of the franchise by a manufacturer for a reason unrelated to any breach of the franchise or violation of R.C. 1333.82 and 1333.86; and (4) a manufacturer's sale, assignment, or other transfer of the manufacturer's product or brand to another manufacturer over which it exercises control.

{¶25} R.C. 1333.85(D) provides an exception to the general rule requiring just cause. Under R.C. 1333.85(D), if a successor manufacturer "acquires all or substantially all of the stock or assets of another manufacturer through merger or acquisition or acquires or is the assignee of a particular product or brand of alcoholic beverage from another manufacturer," then it can terminate, via written notice, a previous manufacturer's franchise agreements within 90 days of the date of the acquisition.

{¶26} BelVino argues that the evidence in the record supports a finding as a matter of law that (1) Euro USA/BelVino had a protected franchise relationship with il Molino

and (2) the OABFA applies to the relationship between Euro USA/BelVino and Empson. In support of its position, BelVino relies primarily on *St. Killian* and *Esber Beverage.*

**{¶27}** In *St. Killian*, the manufacturer obtained a new importer, St. Killian, which then attempted to terminate the manufacturer's franchise agreement with Hill Distributing ("Hill"). As a result, Hill filed a motion for a preliminary injunction, seeking to enjoin St. Killian from terminating Hill's franchise agreement with the manufacturer. The United States District Court for the Southern District of Ohio, Eastern Division, granted Hill's motion, finding that although St. Killian bought the rights to import the alcohol from the manufacturer, the manufacturer still had to approve of St. Killian as its new importer, it continued to maintain control over its brands, and it was effectively reorganizing its business structure. *St. Killian* at 4. The court further found that the policy rationale behind the OABFA supports a decision in Hill's favor. The court concluded that "[t]he change of importer is likely a business rearrangement, and thus St. Killian may not qualify as a 'successor manufacturer' under [R.C. 1333.85(D)]." *Id.*

**{¶28}** In *Esber Beverage*, Esber had an exclusive franchise relationship with the manufacturer. The manufacturer advised Esber that it was in its best interests to move distribution of its wine products in Ohio to a single statewide distributor. *Id.* at ¶ 3. The court reviewed the meaning of "just cause" and found the reasoning in *Tri-County Wholesale Distrib. Inc. v. The Wine Group, Inc.*, S.D. Ohio No. 2:10-CV-693, 2010 WL 3522973 (Sept. 2, 2010) and *Dayton Heidelberg Distrib. Co. v. Vintners Internatl. Co. of New York*, S.D. Ohio No. C-3-87-436, 1991 WL 1119912 (Apr. 8, 1991), persuasive.

{¶29} In *Vintners*, the court analyzed the meaning of R.C. 1333.85(B) and stated that,

> the legislature was aware that, in the absence of any formal definition of just cause, courts interpreting [R.C. 1333.85] were applying a "case-by-case" analysis. By specifically defining what is not just cause, and leaving undefined what is just cause, the legislature has effectively agreed with the courts that the term "just cause" does not lend itself to a single, bright-line definition but, instead, is highly dependent upon the facts of the particular case.
>
> * * *
>
> [A]pplying this fact-sensitive concept of just cause to the case at bar, there is little doubt that the Ohio legislature fully intended the result which the Court has reached. By amending the former [R.C. 1333.85] to expressly prohibit franchise terminations based solely upon a manufacturer's unilateral decision to alter its distribution network, the legislature made clear its intent to disallow actions such as Vintners' cancellation of Plaintiffs' franchises, even though done in good faith. *Id.* at 10.

{¶30} Relying on *The Wine Group* and *Vintners*, the *Esber Beverage* court found that the manufacturer's "legitimate business reason to consolidate its distributors, without evidence of a breach or violation of the OABFA by Esber, [the distributor], does not constitute just cause to unilaterally terminate the franchise between [the manufacturer] and Esber. *Id.* at ¶ 28.

{¶31} The matter before us presents a situation similar to *St. Killian* and *Esber Beverage*. In the instant case, there is no dispute that Euro USA/BelVino was the

exclusive distributor of il Molino's wines when the franchise relationship was terminated in April 2010. Furthermore, there is no dispute that Euro USA/BelVino distributed il Molino's wines for more than 90 days without a written contract. Euro USA/BelVino was registered as the exclusive distributor of il Molino wines in the state of Ohio in July 2009. il Molino, as the maker of wine, is considered as a manufacturer under the OABFA. Therefore, Euro USA/BelVino and il Molino had a manufacturer-distributor franchise relationship that was protected under the OABFA. Unilateral termination and restructuring are the exact situations contemplated in R.C. 1333.85 that do not constitute just cause.

**{¶32}** il Molino and Empson argue that Empson could terminate Euro USA/BelVino's distributorship without "just cause" because Empson is a "successor manufacturer" under the OABFA. Under R.C. 1333.85(D), a successor manufacturer can terminate, via written notice, a previous manufacturer's franchise agreements within 90 days of the date of the acquisition provided that it "acquires all or substantially all of the stock or assets of another manufacturer through merger or acquisition or acquires or is the assignee of a particular product or brand of alcoholic beverage from another manufacturer[.]"

**{¶33}** However, "'[a] manufacturer can only rely on [R.C. 1333.85(D)] 'when there is a change in ownership and control of brands through an arms-length merger or acquisition.'" *St. Killian* at 3, quoting *InBev USA LLC v. Hill Distrib. Corp.*, S.D. Ohio No. 2:05-CV-00298, 2006 WL 2010218 (Apr. 3, 2006). Thus, "an entity can only

qualify as a 'successor manufacturer' under subsection (D) if one of the situations in subsection (B) does not apply." *Id.*

**{¶34}** In the instant case, when Empson took over as il Molino's exclusive importer in February 2010, Empson did not acquire any ownership rights in il Molino. The record demonstrates that il Molino continues to maintain control over its brands and can terminate its relationship with Empson at any time.

**{¶35}** il Molino's reasoning for the change was that it was effectively reorganizing its business structure. Because the wine remains under the ownership and control of il Molino, Empson does not qualify as a "successor manufacturer" under R.C. 1333.85(D). Rather, the record reveals that prior to its relationship with il Molino, Empson was considered a manufacturer, who supplied alcohol to another Ohio distributor. As a manufacturer, Empson should have complied with the mandates of the OABFA, by offering in good faith a written franchise specifying the rights and duties of both parties and by not terminating BelVino/Euro USA's distributor relationship without just cause. By failing to do so, il Molino and Empson failed to comply with the mandates of the OABFA when il Molino's franchise relationship with Euro USA/BelVino was unilaterally terminated.

**{¶36}** Moreover, the policy rationale behind OABFA supports finding in favor of BelVino and Euro USA/BelVino. As the court in *Beverage Distrib., Inc. v. Miller Brewing Co.*, S.D.Ohio Nos. 2:08-CV-827, 2:08-CV-931, 2:08-CV-1112, 2:08-CV-1131, and 2:09-CV-0022, 2009 WL 1542730 (June 2, 2009), stated:

> The [OABFA] is designed in part to protect distributors from certain practices of beverage manufacturers. It recognizes that distributors often have a substantial investment in their businesses, including the physical assets and real property used to distribute the manufacturers' products, and that to allow a manufacturer unilaterally to terminate a franchise agreement puts the franchise distributors at great risk of harm. The just cause requirement for terminating a franchise agreement is intended to protect the franchisee from this type of arbitrary and potentially coercive act. *Id.* at 5.

*See also St. Killian* at 4, quoting *Beverage Distrib., Inc.*

{¶37} Thus, just as in *St. Killian* and *Esber Beverage*, we find that il Molino's reasons for terminating its franchise agreement, coupled with its retention of ownership and control of its brand did not constitute "just cause" to terminate Euro USA/Belvino's distributor relationship.

{¶38} Accordingly, we reverse the trial court's judgment on BelVino's declaratory judgment and breach of contract claims (Counts I and II) and remand with instructions for the trial court to enter judgment, as a matter of law, in favor of BelVino. *See* App.R. 12(B).

## Interference with Contract and Business Relationships

{¶39} In Count III, BelVino claims that Empson intentionally interfered with il Molino's performance of its franchise agreement. As a result of the assignment, BelVino argues that this claim is based on Euro USA/BelVino's relationship with il Molino. BelVino argues that when Empson convinced il Molino to unilaterally and without just cause terminate its agreement with Euro USA/BelVino, Empson interfered with Euro USA/BelVino's franchise agreement. To prevail on a claim of intentional interference with a contract, BelVino must prove "(1) the existence of a contract, (2) [Empson's]

knowledge of the contract, (3) [Empson's] intentional procurement of the contract's breach, (4) the lack of justification, and (5) resulting damages." *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St.3d 415, 1995-Ohio-61, 650 N.E.2d 863, paragraph two of the syllabus.

{¶40} In Count IV, BelVino claims that Empson intentionally destroyed Euro USA/BelVino's business when it purposefully caused il Molino to discontinue its existing relationship with Euro USA/BelVino. Tortious interference with a business relations occurs when "a person, without privilege, induces or otherwise purposely causes a third party not to enter into, or continue, a business relationship, or perform a contract with another." *Castle Hill Holdings, LLC v. Al Hut, Inc.*, 8th Dist. No. 86442, 2006-Ohio-1353, ¶ 47, citing *Juhasz v. Quik Shops, Inc.*, 55 Ohio App.2d 51, 379 N.E.2d 235, paragraph two of the syllabus (9th Dist.1978). However, one is privileged purposely to cause a third person not to enter into or continue a business relation with a competitor of the actor if "(a) the relation concerns a matter involved in the competition between the actor and the competitor and (b) the actor does not employ wrongful means and (c) his action does not create or continue an unlawful restraint of trade and (d) his purpose is at least in part to advance his interest in competing with the other." Restatement of the Law, 2d, Torts, Section 768(1) (1979).

{¶41} In the instant case, there is no evidence that Empson used improper means to become il Molino's national importer. Moreover, Empson's purpose in becoming il Molino's importer was to further its interests in business competition. As a result,

Empson was privileged to compete with Euro USA/BelVino. Thus, we find that the trial court properly granted summary judgment in favor of Empson on Counts III and IV.

**{¶42}** Accordingly, the first assignment of error is sustained in part and overruled in part.

## Motion for Relief from Judgment

**{¶43}** In the second assignment of error, BelVino argues that the trial court erred when it denied its motion for relief from judgment under Civ.R. 60(B). However, based on our disposition of the first assignment of error, this assignment of error is overruled as moot. *See* App.R.12(A)(1)(c).

**{¶44}** Judgment is reversed with respect to Counts I and II and affirmed with respect to Counts III and IV. The matter is remanded with instructions for the trial court to enter judgment in favor of BelVino on Counts I and II.

It is ordered that appellant recover from appellees costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY EILEEN KILBANE, JUDGE

KATHLEEN ANN KEOUGH, J., CONCURS;
MELODY J. STEWART, P.J., DISSENTS (SEE SEPARATE DISSENTING OPINION)

MELODY J. STEWART, P.J., DISSENTING:

{¶45} I would find that at the time BelVino filed its complaint, Euro USA/BelVino was the real party in interest under Civ.R. 17(A) and that the court should have dismissed all of BelVino's claims that derived from the assignment of Euro USA/BelVino's choses in action sounding in violations of the Franchise Act.

{¶46} It is a familiar proposition that a party in interest may assign its legal claims to a third party, typically by a contract assigning its full and exclusive interest in a legal claim to the assignee. *Sprint Communications Co. v. APCC Servs., Inc.*, 554 U.S. 269, 284-285, 128 S.Ct. 2531, 171 L.Ed.2d 424 (2008). When a legal claim or "chose in action" is assigned, Civ.R. 17 is implicated. That rule states that "[e]very action shall be prosecuted in the name of the real party in interest." A real party in interest is one who is directly benefitted or injured by the outcome of the case. *U.S. Bank Natl. Assn. v. Marcino*, 181 Ohio App.3d 328, 2009-Ohio-1178, 908 N.E.2d 1032 (5th Dist.), citing *Shealy v. Campbell*, 20 Ohio St.3d 23, 24, 485 N.E.2d 701 (1985).

{¶47} In *Wells Fargo, N.A. v. Jordan*, 8th Dist. No. 91675, 2009-Ohio-1092 ("*Jordan*"), we held that an assignment of judicial rights after a complaint had been filed was ineffectual because the plaintiff could not have been the real party in interest at the time the action was filed. Wells Fargo, a mortgagee, filed a foreclosure action against mortgagors. The note and mortgage, however, named a different party as the original

lender. When Wells Fargo sought summary judgment, it attached an assignment of the note and mortgage from the named lender to the mortgagee. The assignment, however, was dated more than one month after the complaint had been filed. The trial court dismissed the case and we affirmed, finding that Wells Fargo "was not the real party in interest on the date it filed its complaint seeking foreclosure against Jordan." *See also Deutsche Bank Natl. Trust Co. v. Triplett*, 8th Dist. No. 94924, 2011-Ohio-478, ¶ 12; *Wells Fargo Bank N.A. v. Byrd*, 178 Ohio App.3d 285, 2008-Ohio-4603, 897 N.E.2d 722 (1st Dist.) ("*Byrd*").

**{¶48}** It is true, as BelVino argues, that *Jordan* has not been followed by other districts. For example, in *Deutsche Bank Natl. Trust Co. v. Traxler*, 9th Dist. No. 09CA009739, 2010-Ohio-3940 ("*Traxler*"), the Ninth District Court of Appeals declined to follow *Jordan*, stating that it has held that "a bank need not possess a valid assignment at the time of filing suit so long as the bank procures the assignment in sufficient time to apprise the litigants and the court that the bank is the real party in interest." *Id.* at ¶ 11, citing *Bank of New York v. Stuart*, 9th Dist. No. 06CA008953, 2007-Ohio-1483, ¶ 12.

The distinction between *Jordan* and *Traxler* is one highlighted by the Tenth District Court of Appeals in *Wells Fargo Bank, N.A. v. Sessly*, 188 Ohio App.3d 213, 2010-Ohio-2902, 935 N.E.2d 70 (10th Dist.). That court, citing to the First District's decision in *Byrd*, noted the "glaring distinction" in *Byrd* that "the real party in interest had neither been substituted nor joined in the foreclosure suit." *Sessly* at ¶ 16.

**{¶49}** BelVino filed its initial complaint June 2010, before it took an assignment

of Euro USA/BelVino's chose in action. Even though BelVino had relinquished its status as a distributor in September 2008 when forming the joint venture known as Euro USA/BelVino, it represented itself in the complaint as the distributor of il Molino wines at the time Empson was hired as the new importer. BelVino filed an amended complaint in August 2010, shortly after taking an assignment of Euro USA/BelVino's chose in action. The amended complaint did not mention Euro USA/BelVino much less state that BelVino was asserting Euro USA/BelVino's rights by assignment.

{¶50} I find no functional difference between the cited mortgage cases and this case. Civ.R. 17 permits a plaintiff to cure a real-party-in-interest problem by (1) showing that the real party in interest has ratified the commencement of the action or (2) joining or substituting the real party in interest. *Ohio Cent. RR. Sys. v. Mason Law Firm Co., L.P.A.*, 182 Ohio App.3d 814, 2009-Ohio-3238, 915 N.E.2d 397 (10th Dist.), ¶ 33. At the time it filed its original complaint, BelVino was not the real party in interest. It did not cure any defect in that regard in the amended complaint because it did not join or substitute Euro USA/BelVino as the real party in interest. And it did not show that Euro USA/BelVino ratified the commencement of the action even though Euro USA/BelVino did not dissolve until December 2010 — some four months after filing the amended complaint.

{¶51} What is more, there is no practical distinction between *Jordan* and this case. It is true that il Molino and BelVino had a longstanding relationship, but that fact is immaterial to the question of who was the real party in interest. The Euro USA/BelVino

joint venture supplanted BelVino as the sole distributor of il Molino wines, so il Molino could rightfully understand that BelVino's lawsuit, filed in its own name, was in relation to its status as an importer. il Molino was not required to read between the lines to ascertain the real party in interest.

{¶52} The majority's citation to the old bromide that the civil rules should be liberally construed is unnecessary here: Civ.R. 17(A) specifically grants a party a reasonable time to permit substitution of a party. BelVino had the opportunity to amend its complaint after receiving the assignment of the joint venture's legal rights, but failed to mention that it was suing under rights obtained from Euro USA/BelVino as the sole distributor of il Molino wines. In fact, BelVino failed to mention Euro USA/BelVino at all in the amended complaint. This was a fatal omission and could not be cured simply because BelVino had a course of dealing with il Molino as an importer of il Molino wines. BelVino and Euro USA/BelVino were distinct corporate entities with distinct roles under Ohio's Franchise Act.

{¶53} BelVino should have been barred from asserting any claims relating to the termination of Euro USA/BelVino as the distributor of il Molino wines. With all of the claims asserted by BelVino stemming from Euro USA/BelVino's status as a distributor, I would find that there are no justiciable claims remaining for review. Therefore, I respectfully dissent.